O’NIELL, C. J.
 

 The appellant was prosecuted under an indictment charging that he did, while president of the Bank of Commerce, at Winnfield, La., assent' to the bank’s receiving a deposit of $610.60 from B. Sholars, tax collector, when he, the president of the bank, knew that the bank was insolvent and in failing circumstances. He was convicted and sentenced to imprisonment at hard labor for a term not less than five nor more than seven and a half years. The record contains 61 bills of exception.
 

 Bills No. 1 to No. 6, inclusive, have reference to the overruling of a motion to recuse the district judge, and bill No. 7 has reference to the overruling of a motion to recuse the district attorney. Bill No. 1 refers to the defendant’s objection to the order of Judge Wiley R. Jones, who was presiding, referring the motion to recuse him to Judge L. L. Hooe, of the Ninth district, instead of referring it to Judge P. E. Jones, who was one of the two judges of the Eighth district; the other of the two judges of that district being Judge Wiley R. Jones himself. According to articles 304, 305, and 309 of the Code of Criminal Procedure, the motion to recuse Judge Wiley R. Jones should have been referred by him to Judge P. E. Jones. In a district or parish in which there are two or more district judges, a motion to recuse one of them must be referred by him to another of them if the one to whom it is addressed declines to be recused. In a district or parish having only one district judge, a motion to recuse him must be by him referred to a district judge of an adjoining district, if the judge to whom the motion is addressed declines to be recused. Code Cr. Proc. art. 309. The reason why Judge Wiley R. Jones did not refer the motion to Judge P. E. Jones in this instance was that Judge P. E. Jones was a stockholder in the Bank of Commerce, and it was anticipated that he also would be asked to be recused. However, the referring of the motion for recusation to Judge Hooe, instead of referring it to Judge P. E. Jones, lost all importance, because, on account of the absence of another judge of Judge Hooe’s district, he was unable to act for Judge Wiley R. Jones in this ease, and the order, referring the motion for recusation to him, was therefore rescinded; and the motion for recusation was then referred to Judge Percy Sandel, another judge of an adjoining district. Bill of exception No. 2 was reserved to that order; but that bill also is of no importance because the order complained of was rescinded, and the motion for recusation was then referred to Judge P. E. Jones. Bill No. 3 was reserved to that order; but the bill was not well founded, because the referring of the motion for recusation to Judge P. E. Jones was in accord wth the provisions of articles 304 and 309 of the Code of Criminal Procedure, and was virtually requested by defendant’s counsel. Besides, Judge P. E. Jones recused himself, because of his being a stockholder in the Bank of Commerce, and no objection was made to his be
 
 *433
 
 ing recused. Thereafter Judge Wiley R. Jones signed another order referring the motion for recusation again to Judge Sandel.. Bill No. 4 was reserved to that order, the objection being that Judge Sandel’s judicial district, being the Fourth district, does not adjoin the parish of Winn, in which the prosecution was had, even though the Fourth district does adjoin the Eighth district in which the parish of Winn is. There is no merit in that bill. The term “adjoining district,” used in articles 305, 308, and 309 of the Code of Criminal Procedure, means a district adjoining the one in which the prosecution or procedure is pending — but not necessarily adjoining the parish in which the prosecution or procedure is pending. Bill of exception No. 5 was reserved to the overruling of an objection to Judge Sandel’s passing upon the motion to recuse Judge Wiley R. Jones. The objection was that the order referring the motion to Judge Sandel was not served upon him by the sheriff of the parish of his residence. The fact is that the order was served upon Judge Sandel by the sheriff of Winn parish, in the courthouse in that parish, where Judge Sandel happened to be when the order was rendered and entered upon the minutes of the court. Inasmuch as Judge Sandel took notice of the order and obeyed it, the manner of service of the order upon him was not important.
 

 Judge Sandel, after hearing evidence and arguments on the motion to recuse Judge Wiley R. Jones, overruled the motion; and Bill No. 6 was reserved to the overruling of the motion. It was founded upon the allegations, first, that Judge Wiley R. Jones was related to two of the depositors in the Bank of Commerce, and, second, that the judge attend-' ed the grand jury’s session in which the indictment was found against this defendant, and advised the grand jurors with referente to the charge, and was personally interested therein. We agree with the ruling of Judge Sandel that the motion to recuse Judge Wiley R. Jones was not well founded. One of the depositors in the bank, to whom Judge Jones was related, was an uncle, having $40.33 in the bank, and the other was a brother-in-law of the judge, and had $14.65 in the bank. It is contended by counsel for appellant that Judge Jones’ relation to these depositors was a cause for his recusation, under the provision in article 303 of the Code of Criminal Procedure that the judge’s being related within the fourth degree to the party injured, or his being the brother-in-law, etc., of the party injured, is a cause for the judge’s being recused in a criminal prosecution. But the only depositor who was an “injured party” in consequence of the crime charged in this case, if the crime was in fact committed, was the depositor named in the indictment, whose deposit of $610.60 is alleged to have been received when the defendant, as president of the bank, knew-that it was insolvent and in failing circumstances. The other depositors, who were already depositors, may have been benefited, but were not injured, by any deposit received after the bank had become insolvent or was in a failing condition. It is argued that all of the depositors were injured by the failure of the bank; but the answer to that is that the defendant in this case was not charged with causing or contributing to the failure of the bank. The second ground for the motion to recuse, that is to say, that the judge went into the grand jury session and advised the grand jurors upon this case, was
 
 *435
 
 not sustained by tbe evidence on tbe subject. Tbe judge was invited into the grand jury room by the grand jury and was consulted only with regard to a matter concerning the care and maintenance of the prisoners in the parish jail. The judge did not display or have any personal interest in this case. The ruling of Judge Sandel on the motion to recuse Judge Wiley R. Jones was correct.
 

 The motion to recuse the district attorney was overruled by Judge Wiley R. Jones, after the motion to recuse him was overruled by Judge Sandel; and to the overruling of the motion to recuse the district attorney bill of exception No. 7 was reserved. The motion was based, first, upon the fact that the district attorney had a deposit of $126 in the Bank of Commerce, and, second, upon the fact that, after the bank commissioner took charge of the defunct bank and appointed a liquidating agent, the district attorney was designated as special counsel for the bank commissioner and the liquidating agent. The objection that the district attorney was a depositor in the bank has been disposed of by our ruling on bill No. 6. His being special counsel for the bank commissioner and for the liquidating agent in the liquidation
 
 of'the
 
 affairs of the bank is not within any of the causes for recusation listed in the Code of Criminal Procedure, and is not elsewhere declared to be a cause for recusation of a district attorney. One of the three causes stated in article 310 of the Code of Criminal Procedure, for recusing a district attorney, is if he has a personal interest adverse to the prosecution of the case; but the district attorney’s being special counsel for the bank commissioner and the liquidating agent does not give the district attorney an interest opposed to the prosecution of the president of the bank for assenting to the bank’s receiving a deposit when'he knew that the bank was insolvent and in failing circumstances. In fact, the liquidating of the affairs of the bank is a matter entirely apart from the prosecution of the president of the bank. There was no cause, therefore, for the district attorney in this case to be recused.
 

 Bills of exception No. 8 and No. 9 have reference 'to the overruling of a motion to quash the indictment. The first ground for the motion was that the order of court ordering the jury commission to convene was issued on the same day on which a new jury commission was appointed, and before tbe newly appointed members had taken the oath. It is contended that the order to convene was, necessarily, addressed to the outgoing members of the jury commission because they remained in office until their successors were qualified by the taking of the oath, and hence that there was no order addressed to the newly appointed jury .commissioners to convene. A sufficient answer to the argument is that the order to convene was addressed, necessarily, to the jury commission itself, as a body, and not to the individuals composing the commission. A change in the .personnel of the commission, between the date of an order to the commission to convene and the date of convening, did not nullify the order to convene. The second ground for the motion to quash the indictment was that the two witnesses who served as such at the drawing of the jury, by the jury commission, were depositors in the Bank of Commerce, and were therefore not disinterested witnesses, as required by article 178 of the Code of Criminal Procedure. We have already ruled, in our.
 
 *437
 
 rulings on bills 6 and 7, that a person’s being -a depositor in the Bank of Commerce did not .of itself make him interested in this prosecution. It is not charged that there was any fraud or wrongdoing in the drawing of the jury ; in fact, there was no charge against this defendant at that time, and hence there could not have been any discrimination against him .in the drawing of the jury. The third ground for the motion to quash the indictment was :that the witnesses to the drawing of the jury were not “specially summoned,” as required ■by article 178 of the Code of Criminal Procedure. The fact complained of in that respect is that no formal summons was served ■upon the witnesses, but they were verbally notified by the clerk of court a day or two days 'before the jury drawing to be present for the purpose. That was a sufficient summons because the witnesses attended and served as ■witnesses. The requiremént of article 178 of the Code of Criminal Procedure, that a witness to the .proceedings of the jury commis■sion “shall be specially sumihoned by-the clerk as a witness to said proceeding,” means merely that the witnesses shall know in advance, and from the beginning of the proceedings, that they are serving as the official witnesses, to see that there is no irregularity. The fourth ground for the motion to quash the indictment was that the judge had attended the session of the grand jury and there advised the grand jurors upon the subject of indicting the defendant. We have already found, from the evidence, in considering bill of exception No. 6, that the judge was not present at any time during the grand jury’s consideration of this case, and did not in any way attempt to influence the grand jury in the finding of the indictment.
 

 Bill of exception No. 10 has reference to the overruling of a motion for a continuance. Inasmuch as the continuance was afterwards obtained by another means, this bill of exceptions is of no importance, and is' virtually abandoned.
 

 Bills of exception No. 11 and No. 12 have reference to the overruling of another motion for a continuance.. One of the two grounds for the motion was that the bank commissioner had not made a return on a writ of subpoena duces tecum that had been issued to him to produce a certain report of the bank’s affairs. That objection was disposed of by the commissioner’s furnishing the report before the jury was impaneled. The other ground for the motion for a continuance was that an attorney employed by the defendant, and residing in another parish, was absent on account of illness in his family. He was not leading counsel in the case. On the contrary, the defendant was represented by four other attorneys, who were in court when the case was called for trial. In fact, the attorney who was absent does not appear now as counsel in the case. These bills of exception were submitted virtually without argument, and we find them not well founded.
 

 Bills of exception No. 13 and No. 14 have reference to objections made to certain declarations made by the district attorney in his opening statement to the jury. The substance of the statement, which was repeated substantially by the district attorney after it was objected to, was that, after the defendant had closed the bank’s doors, the liquidator and the district attorney gave the defendant an opportunity to see if he could reopen the bank, and that he had not yet reopened the
 
 *439
 
 bank. The district attorney added that, if the judge should exclude the evidence on that* subject, the jury should not consider his (the district attorney’s) statement as evidence in the case, or be influenced by it. There is nothing in the record, or in the argument on these bills of exception, to show that the statement of the district attorney was prejudicial to the defendant, or that it was not properly a part of the opening statement provided for by article 333 of the Code of Criminal Procedure. Hence we find no-merit in these bills of exception.
 

 Bill of exceptions No. 15 has reference to the overruling of an objection made by defendant’s attorneys to the introduction in evidence by the state of all of the deposit slips for deposits received on the date on which the deposit which is the basis of this prosecution was received. The objection was that the deposit slips representing other deposits, other than the one complained of, were not relevant to any issue in thércase, and were prejudicial to the defendant. It appears that, when the district attorney offered in evidence the receipt for the deposit which was the cause of this prosecution, the attorneys for the defendant objected on the ground that it was not signed by the receiving teller or by any one else for the bank, either in the pass book or on the deposit slip. The prosecuting attorney, therefore, had some doubt whether the unsigned deposit slip would be sufficient evidence of the receipt of the deposit. The other deposit slips of that date were introduced in evidence, therefore, merely to show that the custom was to issue them unsigned. The district attorney announced when he offered the deposit slips in evidence that the purpose or effect of the evidence was restricted to proving the system of issuing deposit slips unsigned. For that purpose the-evidence was admissible. It is true that the evidence tended to prove the commission of other crimes like the one charged; but evidence that is relevant to some issue in a criminal prosecution is not rendered inadmissible-by being- prejudicial to the defendant.
 

 Bill of exception No. 16 has reference to an objection made by counsel for the defendant to an explanation given by the tax collector’s deputy or employee, a woman, who made the deposit which is the basis of this-prosecution. She testified that it was her custom, in depositing the tax collector’s money in bank, to make out a deposit slip before going to the bank, and to take the money and deposit slip and passbook to the bank and hand them to the receiving teller, who would count the money, check the items on the deposit slip, and enter the deposit in the passbook. But, on the occasion of the deposit in question, she brought the wrong passbook to the bank, and the receiving teller therefore' gave her a duplicate deposit slip, as evidence of the deposit. The only objection made to the testimony was that it was irrelevant. Our opinion is that it was relevant and important to explain the want of an entry of the deposit in the passbook.
 

 Bill of exception No. 17 refers to the overruling of an objection made by defendant’s attorneys to the introduction of certain evidence to show that the defendant knew that the bank was insolvent when the deposit in question was received. The substance of the evidence complained of was that the bank had received a check on the bank from a local firm to take up a sight draft with a bill of lading attached, and had failed to remit
 
 *441
 
 for the sight draft. The evidence was admissible for the purpose of showing that the bank was insolvent and that the president knew that it was insolvent.
 

 Bills No. 18 to No. 22, inclusive, have reference to the overruling of an objection made by defendant’s attorneys to certain evidence offered by the state to prove that the bank was insolvent and that the defendant knew that it was insolvent when the deposit in question was received. The Bank of Commerce, of Winnfield, was the successor of— and in fact a mere reorganization of—the First National Bank of Winnfield—with the same officers, directors, and stockholders, and the same business, etc. The conversion of the national bank into a state bank took place about seven months before the date of the deposit complained of in this prosecution. Before the assets were transferred by the old bank to the new bank, the national bank examiner had ordered certain notes and bills receivable charged off, as being worthless, and at the time of the transfer the state bank commissioner ordered other such paper charged off; and, in order to make it impossible for any of the charged-off paper to be listed thereafter as an asset of the new bank, the officers were required to take the worthless paper out of the portfolio. Thereafter several of the charged-off notes were returned to the bank, without collateral security, and were listed among the securities or assets of the bank. The evidence objected to tended' to prove that the defendant, having been president of the old bank and being president of the new bank, had knowledge of the transactions, and hence knew that the new bank was insolvent. The objection made to the cv- ' idence was that it was irrelevant, particularly the evidence relating to the old bank, and was prejudicial, in that it tended to prove some othev wrong done by the defendant, not charged in this indictment. We agree with the district judge that the evidence was relevant to the question of the defendant’s knowledge of the insolvent condition of the bank. The fact that the evidence was prejudicial to the defendant did not make it inadmissible.
 

 Bill No. 23 has reference to the overruling of an objection to the introduction in evidence of an audit of the bank’s books; the objection being that the audit was made after the bank had failed, and hence that the audit did not show the condition of the bank at the time when the deposit complained of was received. The objection pertained to the sufficiency or effect of the evidence, and not to its admissibility.
 

 Bill No. 24 has reference to the overruling of an. objection made to a question propounded by the district attorney to the certified public accountant who had audited the books of the bank as to whether he had found in his investigations that the First National Bank of Winnfield had charged off certain loans. The objection was, first, that the question was a leading question, and, second, that the testimony was irrelevant. The form of the .question was not objectionable; and the testimony was relevant, for the reasons given in our discussion of Bills No. 18 to No. 22, inclusive.
 

 Bills No. 25 to No. 34. inclusive, are discussed together in appellant’s brief because they have reference to one and the same subject; that is, they refer to the overruling of the defendant’s objections to the state’s introducing evidence of the transactions referred to in bills No. 18 to No. 22, in-
 
 *443
 
 elusive, and of false entries in the books of the bank. The purpose of the evidence was to show that the bank was insolvent, and that the defendant knew it, when the deposit complained of was received. For that purpose, and for the reasons stated in our discussion of bills No. 18 to No. 22, inclusive, the evidence was admissible.
 

 Bill No. 35 has reference to the overruling of a motion to discharge the jury, on the ground that one of the jurors, J. R. Gorham, could not read or write the English language. Article 172 of the Code of Criminal Procedure, prescribing the qualifications for jury service, requires that a juror shall be able to read and write the English language. The defendant’s motion to discharge the jury was overruled on the ground that the objection to the disqualified juror came too late. Article 355 of the Code of Criminal Procedure provides that the incompetency of a juror, arising from any cause, cannot be complained of after the juror is sworn in, unless the juror answered falsely on his voir dire examination as to the particular disqualification afterwards complained of. Articles 357, 358, and 359 are to the same effect, and article 360 provides that, if it be discovered, after a juror has been accepted and sworn in, that he is incompetent to serve, the judge may, in his discretion, at any time before evidence has gone to the jury, order the juror put aside and the panel completed in the ordinary course. In this case a considerable part of the evidence had gone to t|ie jury when, on the 5th day of the trial, it was discovered that the juror, Gorham, lacked the qualification of being able to read and write English. The attorneys did not ask the juror whether he could read and write, on his voir dire examination. Even before the adoption of the Code of Criminal Procedure, it was decided that a disqualification of a juror could not be complained of successfully after his-being sworn in unless he had answered falsely with regard to the particular disqualification on his voir dire examination. State v. Foster, 150 La. 971, 91 So. 411. Counsel for the appellant claim that they were dispensed from the necessity of asking the juror Gorham, or any juror, on his voir dire examination, whether he could read and write the English language, because, on the first day of that week, the judge, according to his custom, as soon as court was convened, announced publicly from the bench the qualifications prescribed for jury service, and asked that, if' any one drawn for jury duty lacked any of the qualifications, he should come forward and make known his disqualification. It appears that it is the judge’s custom to make-that announcement on the opening day of every criminal term of the court, at the time when the judge asks if there are any exemptions or excuses from jury duty to be claimed. The custom is a very good one; but it is not intended to — and it does not — dispense with the voir dire examinations of jurors, or relieve an attorney, afterwards trying a criminal case, of his duty to ascertain by a voir dire examination the qualifications of every one tendered for jury duty. In this ease the attorneys must have realized how important it was whether a juror could read the English language, because it was known that a-considerable part of the evidence would be documentary evidence. A considerable part of all of the evidence that went to the jury was documentary evidence. But it so happened that all of the evidence in the case, ver
 
 *445
 
 bal or documentary evidence, was offered and introduced by the district attorney as evidence against the defendant. He did not offer any evidence at all, verbal or documentary. Therefore the documentary evidence, which, perhaps, the juror Gorham did not have the full benefit of, was deemed to be evidence against the defendant — not for him. It is not at all likely that the defendant suffered by the failure of his attorneys to question the juror Gorham, on his voir dire examination, as to whether he could read English; and there was no rule of public policy against their failure to ask such questions. Our conclusion is that this bill of exceptions is not well founded.
 

 Bill No. 36 has reference to the judge’s having refused to hear evidence to prove the facts alleged in the motion referred to in Bill No. 35. The judge assumed that the facts alleged in the motion were true'. Hence there was no necessity to hear evidence on the subject.
 

 Bill No. 37 has reference to the overruling of an objection to the testimony of a woman who swore that she was a depositor in the Bank of Commerce and attempted unsuccessfully to withdraw her deposit a short time before the bank failed. The objection was that the witness was a widow, with only about $600 in the bank, and that the purpose and effect of parading her misfortune before the jury was to arouse sympathy for the widow and consequent prejudice against the defendant. It is possible, of course, that the evidence had some such prejudicial effect; but the avowed purpose of the evidence was to prove that the bank was insolvent at the time in question, and that the defendant knew it; and the evidence was admissible for that purpose.
 

 Bill No. 38 has reference to the overruling of an objection to the testimony of a certified public accountant who assisted in listing and appraising certain promissory notes which formed a part of the assets of the insolvent bank. The witness was asked what he had done to assist in the appraisal of the notes. The objection, stated substantially, was that the appraising of the notes was done out of the presence of the defendant, and was a mere matter of opinion of the appraisers, and was without effect, because the appraisal was made more than a year after the bank had failed, and was of only a .comparatively small part of the assets of the .b.ank. The objection was aimed more at the effect or sufficiency of the evidence than at its admissibility. The answer of the witness could not have been harmful, viz. “I listed the names and the amounts of certain notes they called off to me, and made a total of these notes.” This bill of exceptions is not well founded.
 

 Bill No. 39 has reference to an objection to a remark made by an attorney assisting in the prosecution, when he was offering certain documents in evidence. Asking the clerk of court to read the documents to the jury, the attorney said, perhaps facetiously, “Johnnie might not be able to read it, but the clerk can read it.” The objection was that the name Johnnie was the name by which J. R. Gorham was known in the community, and that the remark was a reminder that the judge had overruled the defendant’s motion to discharge the jury because of Mr. Gorham’s inability to read English. It is
 
 *447
 
 very doubtful whether the jury heard the remark. If Mr. Gorham heard it, and if it was intended to ridicule him for being unable to read English, it was more apt to prejudice him against the attorney assisting in the prosecution than to prejudice him against the defendant. There is no merit in this bill.
 

 Bill No. 40 has reference to the overruling of an objection to the introduction in •evidence of a bank book, called a note blotter, of the First National Bank of Winnfield, predecessor of the Bank of Commerce. The purpose and effect of the evidence was to show that about $76,000 worth of notes were charged off, as worthless, during a period of about two years before the failure of the Bank of Commerce. Some of the charged-off notes found their way back into the portfolio ,of the Bank of Commerce. The evidence was admissible because it tended to show that the Bank of Commerce was insolvent at the .time in question, and that the defendant ¡knew it. That is explained in our ruling on bills No. 18 to No. 22, inclusive.
 

 Bills No. 41 to No. 45, inclusive, refer to the judge’s sustaining an objection by the district attorney to certain questions which were asked by counsel for the defendant, while cross-examining the liquidating agent, to ascertain the costs of the liquidation. The attorneys for appellant contend that the purpose of the questions was to ascertain the amount which the assets of the bank finally proved to be worth, in order to show what they were really worth when the deposit in question was received. Hence counsel for •appellant cite State v. Hoffman, 120 La. 949, 45 So. 951, to the effect that, in a case like this, although the value of the bank’s assets are to be judged as of the date of the deposit complained of, nevertheless the value which they eventually proved to have is admissible as a circumstance tending to show what value they had on the day of the deposit. That is true, but the questions which were ruled out in this case had no tendency whatever to prove the value which the bank’s assets eventually had. There was no objection to any such proof. The objection was to inquiring into the costs, or the reasonableness of the costs, of the liquidation. We agree with the district judge that the objection was well founded, because the inquiry into the costs of the liquidation of the bank was not at all relevant to any real issue in the case, and was apt to distract the attention of the jury from the issues in the case.
 

 Bill No. 46 has reference to the overruling of an objection made by defendant’s counsel to evidence of a certain transaction in which the defendant, acting for another party, procured a promissory note to represent a debt due on an open account, and made the note payable to the bank, and treated it as an asset of the bank, when in fact it was not an asset of the bank. The evidence was admissible because it tended to show the insolvent condition of the bank and the defendant’s knowledge of that condition.
 

 Bill No. 47 refers to the overruling of an objection by defendant’s counsel to certain evidence relating to an appraisement made during the trial of some of the assets of the defunct bank. The objection was that the valuation was made more than a year after the bank had closed its doors, and was not a valuation of all of the. assets of the bank. The ruling was correct, because the
 
 *449
 
 objection had reference to the sufficiency or effect, rather than to the admissibility, of the evidence.
 

 Bill No. 48 has reference to the judge’s sustaining an objection/to a certain question asked by counsel for the defendant in cross-examining a witness for the state. The judge says in the statement per curiam that the objection was to the form of the question, and that it was afterwards asked in another form and was answered by the witness, without any objection on the part of the state. There is therefore no merit in the bill.
 

 Bill No. 49 has reference to the overruling of an objection made by defendant’s counsel to a question asked by the district attorney in re-examining a witness for the state. The objection was that the question contained the implication of 'a certain fact which had not been proven. It is said in the per curiam that the fact which was assumed in the question had been proven. That puts an end to the bill.
 

 Bill No. 50 was reserved to the overruling of an objection to the state’s introducing in evidence a promissory note signed “Tullos Oil Company,” without the signature of any person representing the company or signing its name to the note. The note was among the assets of the bank. It is said in appellant’s brief that he was interested in the Tullos Oil Company and that the note was probably signed by him. It was deemed worthless by the liquidating agent, and in fact he was unable to collect it, because there was no evidence of authority on the part of any one to sign the company's name to the note. The note was admissible in evidence because it tended to show the condition of insolvency of the bank and the defendant’s knowledge of the insolvency.
 

 Bill No. 51 has reference to the overruling of an objection to evidence of the value of a certain note among the assets of the bank. The objection urged by defendant’s attorneys was that the evidence was irrelevant and immaterial because the valuation of the note was made more than a year after the bank was closed, and because the witness was not a certified accountant, and •because the note was only a comparatively small part of the assets of the baiik. The objection was properly overruled because it was aimed at the sufficiency or effect of the evidence, and not at its admissibility.
 

 Bills No. 52 and No. 53 have reference to the court’s having overruled objections of the same nature as those referred to in bill No. 51, and to evidence of the same character as that referred to in bill No. 51. For the reason stated in our discussion of that bill, the objections were properly overruled.
 

 Bill No. 54 was reserved to the court’s sustaining an objection made by the district attorney to a question which one of the attorneys for the defendant asked the president of the Bank of Winnfield on cross-examination. The question was whether the witness, as president of the Bank of Winnfield, was not very uneasy about his own bank being able to operate, immediately after the closing of the Bank of Commerce. The jury was removed from the courtroom immediately after the objection was made, and, in the absence of the jury, the witness answered that, under normal conditions, the officers of
 
 *451
 
 his bank had no fear, because they regarded the bank as being sound; that, on account of the sudden decline in values in the last three years, there was hardly a bank in the country without some bad paper; that the Bank of Winnfield had enough undivided profits to absorb any bad paper in its portfolio; that a bank failure always caused some uneasiness in the community; and that it was not possible immediately to determine whether the disturbance would become a panic. The objection to this testimony being sustained, and the jury being returned into the courtroom, the attorneys for the defendant asked that the clerk be allowed to read the answer of the witness to the jury, which was objected to, and the objection was sustained. The objection, stated substantially, was that there was no good reason shown for inquiring into the affairs of the Bank of Winnfield, and that the inquiry had no relation whatever to any issue in the case before the jury. Our opinion is that the judge was right in sustaining the objection. There is no showing that the inquiry had any relation to any issue before the jury, or that the defendant had any advantage whatever to gain by having the answer of the witness read to the jury. It is true that article 376 of the Code of Criminal Procedure provides that a witness who has testified to any one fact in his examination in chief is subject to cross-examination “upon the whole case.” But that does ’ not mean that the cross-examination may go beyond the issues of the case, or to matters not at all related to the issues in the case. It means merely that the right to cross-examine a witness is not restricted to the testimony given in his examination in chief, as it was thought to be before the Code of Criminal Procedure was adopted. The judge’s ruling in that respect was right.
 

 Bill No. 55 also was reserved to the court’s sustaining' an objection made by the district attorney to a question which one of the attorneys for the defendant asked the president of the Bank of Winnfield on cross-examination ; but, after the objection was sustained, and a bill of exceptions was reserved, the witness answered the question; and no further objection was made. The ruling, therefore, had no effect.
 

 Bill No. 56 was reserved to a remark made by the assistant district attorney in his argument to the jury. It appears that, after the prosecuting attorneys had spent a week introducing evidence for the state, and announced that the offering of evidence for the state was completed, unless it should be for rebuttal, the attorneys for the defendant went into a conference, and the court took a recess of two hours; and, when the court convened again, the attorneys for the defendant announced that they would not offer any evidence, because their opinion was that the state had not made out a case against the defendant. The assistant district attorney, in his argument to the jury, spoke, metaphorically, of the conference which the defendant’s attorneys had held, and of their announcement of the result of the conference, thus: “I can imagine they saw, as they discussed this matter, the mountain of evidence on one side and the deep gulf on the other side, into which they would plunge if they attempted to offer any evidence in this ease.” The objection which the defendant’s attorneys made was that the argument was a comment upon the fact that the defendant had not availed himself of the privilege of testi
 
 *453
 
 fying. The intention of the assistant district attorney, however, was merely to remind the jury that the evidence in the case was all one way, and that the reason why the attorneys for the defendant had not offered any evidence was, not that the evidence for the state was insufficient, but that it was insurmountable. A little eloquence in the argument of a criminal case is not objectionable merely because it is effective; it only seems objectionable when it is effective. It is said in the per curiam that one of the attorneys for the defendant, in his argument to the jury, before the assistant district attorney had argued, undertook to explain to the jury why the defendant’s attorneys had found it unnecessary to offer any evidence in his defense. It was in response to that explanation or argument that the assistant district attorney reminded the jury of the so-called mountain of evidence on the one side and absolute want of evidence on the other side. That might have reminded the jury that the defendant had failed to avail himself of his privilege to testify, but it was not intended so to do, and it did not direct the attention of the jury particularly to the defendant, or to his failure to testify. In State v. Flattmann, 172 La. 620, 135 So. 3, it was held that a comment upon the failure of the defendant to call his two companions to testify was not a comment upon the failure of the defendant to testify, even though he and the two companions were in the same automobile at the time of the homicide for which he was on trial. Article 382 of the Code of Criminal Procedure allows an attorney in argument to draw from the failure to produce evidence shown to be in the possession of the opposite party, as well as from the evidence produced, any conclusion of fact which to the attorney, may seem reasonable. That, of course, would not allow an adroit reference to the failure of the defendant to avail himself of his right to testify; but' there was no such wrong done or intended in this instance. This bill of exceptions is not well founded.
 

 Bill No. 57 was reserved to the refusal of the judge to give the jury a special charge' requested by defendant’s counsel. The substance of the charge requested was that the jury was not required to accept as conclusive any estimate of values of assets given by the certified public accountant, or by the bank examiner, or by any particular witness; the' question of values of the assets of the bank being a question of fact for the jury to determine from all of the evidence in the case.. The judge charged the jury that the question of values of the assets of the bank was a question of fact for the jury to determine from all of the evidence in the case, but declined to give the first part of the requested charge, on the ground that it was not appropriate to the facts. Our opinion is that the part of the charge that was given was sufficient.
 

 Bill No. 58 was reserved to the refusal of the judge to give the jury a special charge requested by defendant’s counsel. The requested charge, in substance, was that, in order to convict the defendant, the state had to prove that he had knowledge that the bank was in failing circumstances
 
 and
 
 insolvent. The statute, section 1 of Act No. 108 of 1884, p. 144, under which the defendant was prosecuted,. uses the conjunction
 
 or,
 
 not
 
 and,
 
 thus: “That it shall be a crime for any President, Director, Manager, Cashier, or other officer, or owner of any private or public bank or
 
 *455
 
 banking institution in the State, to assent to the reception of any deposit, or the creation of any debt by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances.” The indictment charged that the defendant had knowledge that the bank was insolvent
 
 mid
 
 in failing circumstances. Article 222 of the Code of Criminal Procedure provides that the conjunction
 
 and
 
 ought to be used in such cases; but that does not mean that, when a statute condemns an act under either one or another of two alternative conditions, both of the alternative conditions must be proven if both are alleged. There was no error in the judge’s refusal to give the requested charge.
 

 Bill No. 59 was reserved to the refusal of the judge to give the jury a special charge requested by defendant’s counsel. The substance of the charge requested was that the only way to determine whether a bank was in a failing condition and insolvent was to prove the value of all of the assets and the amount of the liabilities, and that a valuation of only a part of the assets did not show' that the bank was in a failing condition and insolvent. The judge explains in his per curiam that he refused to give the requested charge because, according to the facts of the case, it would have been misleading. According to the undisputed evidence, the worthless 'items that were carried as assets on the books of the bank were more than enough to wipe out all of the capital, surplus, and undivided profits, even though the assets that were not appraised might have been worth the full value at which they were carried on the books of the bank. The judge was right, therefore, in refusing to give the requested charge, which, in reality, was more an instruction on the sufficiency of the evidence than an instruction on the law of the case.
 

 Bill No. 60 was reserved to the refusal of the judge to give the jury a special charge requested by defendant’s counsel. The requested charge was, in substance, that the failure of the defendant to avail himself of his right to testify in the case should not be considered against him; and that, as the state, in order to convict the defendant, had to prove his guilt beyond a reasonable doubt, he was not required to offer any evidence whatever. The requested charge was refused on the ground that the substance of it was contained in the general charge given to the jury. We find that to be true.
 

 Bill No. 61 was reserved to the overruling of a motion for a new trial. In addition to the complaints theretofore made, and noted in the bills of exception, three additional grounds for a. new trial were alleged, viz.
 

 First. That a son of the juror, J. R. Gorham, living in the same house with him, soon after the verdict was rendered, made a statement to the effect that the defendant had beaten the juror out of $20, and that he was glad he was on the jury.
 

 ¡Second. That a juror, Howell, after being summoned as a tales juror, and while buying a railroad ticket to go to Winnfield in response to the summons, made a remark to the station agent, unfavorable to the defendant, which was not known by the defendant or his counsel until the trial was over.
 

 Third. That a deputy sheriff, in charge of the jury, went into the jury room and instructed the jury how to write the verdict, before the jury had agreed upon a verdict.
 

 
 *457
 
 1.47] íhe evidence taken on the trial of the motion for a new trial shows that the juror Gorham had no prejudice against the defendant. The allegation in the motion was founded upon the fact that during Gorham’s dealings with the bank he discovered an error of $20 in his account, and called attention to it. The error was corrected, and. Gorham continued to do business with the bank. He was not disqualified as a juror in this ease by the incident referred to.
 

 As to the juror Howell, the station agent testified, on the trial of the motion for a new trial, that, according to his recollection, he said to Howell that he, the station agent, did not think much óf a banker who would close a bank, whereby the depositors could not get their money; and that Mr. Howell replied; “I don’t think much of them either.” Mr. Howell testified that he had no recollection of . making the remark. The judge was convinced from the evidence that Mr. Howell had no prejudice against the defendant, or opinion as to his guilt or innocence, and was a competent juror; and we have no reason to take issue with the judge in that respect.
 

 As to the third complaint, it is a fact that, on the morning on which the jury brought in the verdict, the foreman called the deputy sheriff into the room and asked him how to word the “report,” and the deputy sheriff told the foreman that, if the jury found the defendant guilty, he should write: “We, the jury, find the accused guilty,” and should sign it; and that, if the jury found the defendant not guilty, the foreman should write: “We, the jury, find the defendant not guilty,” and should sign it.
 

 The deputy sheriff testified that the case was never mentioned in his presence by any of the jurors at any other time. It was wrong, of course, for the deputy sheriff to undertake to instruct the jury, or to discuss the case with them at all. He should have referred the foreman’s request to the judge. State v. Simon, 37 La. Ann. 569. But there is no reason to believe that the verdict rendered by the jury was prompted or influenced in any'way by the instruction given by the deputy sheriff. The error was not serious-enough to justify our setting aside the verdict.
 

 The verdict and sentence are affirmed.