86 So.2d 530

**STATE of Louisiana**

v.

**Herbert REINHARDT.**

No. 42633.

Feb. 20, 1956.

Rehearing Denied March 26, 1956.

David A. Neuhauser, Milo B. Williams, New Orleans, for appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., James C. Garrison, Asst. Dist. Atty., New Orleans, for appellee.

MOISE, Justice.

Herbert Reinhardt was charged in the Criminal District Court for the Parish of Orleans, in a Bill of Information, with having committed the crime of gambling as defined by LSA–Revised Statutes 14:90, in that he did unlawfully and intentionally conduct and directly assist in the conducting, as a business, at a location in the 2600 block of Thalia Street, in the City of New Orleans, of a lottery, whereby a person risked the loss of a thing of value in order to realize a profit.

The accused was tried, found guilty, and sentenced to pay a fine of $350 and to serve six months in the parish prison, and he prosecutes this appeal from his conviction and sentence.

The factual pattern of this case is that the accused was tried before a judge and not by a jury.

Seven Bills of Exceptions were reserved during the course of the trial.

Bills of Exceptions Nos. One, Two, and Three were reserved to the trial judge's permitting the offering in evidence of defendant's signature on an Appearance Bond in a previous prosecution—No. 142–249 of the Criminal District Court for the Parish of Orleans.

The State contends that the purpose of referring to the previous prosecution was to lay a predicate for the introduction of the Appearance Bond signed by the defendant in the earlier case as a basis for a handwriting comparison.

Bill of Exceptions No. One was reserved to the ruling of the trial court admitting the testimony of Officer Felix Palmisano, who testified that he recognized the defendant and that the defendant was the same man against whom he had signed an affidavit in Case No. 142–249, supra.

Defendant's counsel argues that this case does not fall within the enumerated exceptions provided for in LSA–Revised Statutes 15:445 and LSA–Revised Statutes 15:446, and that the evidence of another offense was inadmissible in the trial. These provisions of the LSA–Revised Statutes relate to prior crimes committed by a defendant and that such is admissible for the specific purpose of showing intent, knowledge or system.

In State v. Wideman, 218 La. 860, 51 So. 2d 96, 99, we held:

" * * * While as a general rule evidence of one offense cannot be of-

fered in proof of another offense, this rule is subject to several well known exceptions, among them the one that permits the introduction of such evidence when it 'tends to identify the accused as the perpetrator of the crime charged.' State v. Hicks, 180 La. 281, 156 So. 353. See, also, State v. Johnson, 111 La. 935, 36 So. 30; State v. Ferrand, 210 La. 394, 27 So.2d 174, 167 A.L.R. 559, and State v. Mattio, 212 La. 284, 31 So.2d 801."

The following syllabus from the case of State v. Wales, 168 La. 322, 122 So. 52, 53, is germane to the issue here:

"Reception of evidence, in robbery prosecution, tending to show the independent crime of stealing the automobile with which the robbery was committed, held not erroneous, where the testimony of the owner of the automobile aided substantially in establishing identity of perpetrators, their preparation for the crime, and their rapidity of movement; * * *."

In State v. Montgomery, 170 La. 203, 127 So. 601, 602, we held:

" * * * But, whenever the evidence of the commission of another crime, other than the crime for which the defendant is on trial, is relevant to the question of his guilt or innocence of the crime charged, the evidence of the commission of the other crime should not be excluded merely because of its prejudicial effect. * * *"

In State v. Bryan, 175 La. 422, 143 So. 362, 367, we held:

" * * * It is true that the evidence tended to prove the commission of other crimes like the one charged; but evidence that is relevant to some issue in a criminal prosecution is not rendered inadmissible by being prejudicial to the defendant."

Also see, State v. Palmer, 227 La. 691, 80 So.2d 374.

We agree with the following holding made by the trial judge in his per curiam:

"Appellant Reinhardt was charged and prosecuted on the theory that he was employed as a vendor of lottery plays or lottery wagers. As a vendor of said lottery plays or lottery wagers it was the business of appellant Reinhardt to make a record of the numbers selected by the player and upon which numbers the player was making his bet or bets with the lottery company represented by Appellant Reinhardt. The police, at the scene of the arrest, seized a record consisting of several pages setting out the various lottery plays or lottery wagers.

"The State was seeking to prove by the testimony of Palmisano and other witnesses that the lottery plays or lottery wagers seized at the scene of the arrest were in the handwriting of Appellant Reinhardt.

"In order to make this proof it was necessary for the State to introduce in evidence a known sample of the handwriting of Appellant Reinhardt. The only known and provable sample of Reinhardt's handwriting available to the State for introduction in evidence was Reinhardt's handwriting on an appearance bond in a case in which the witness Palmisano had arrested Reinhardt in 1953. In this case the witness Palmisano had not only made the arrest of Appellant Reinhardt but had also signed the affidavit in the Criminal District Court against Appellant Reinhardt. Consequently the only witness available to the State to identify Appellant Reinhardt with the prior case to prove Reinhardt's handwriting on the appearance bond was the witness Palmisano and in order to so identify Appellant Reinhardt the witness Palmisano had to testify that he had arrested Appellant Reinhardt, that he had signed the affidavit against him in the Criminal District Court, which affidavit was presented to Palmisano for identification, and that Appellant Reinhardt was the same person he so named as defendant in that affidavit.

"By this method of proof Appellant Reinhardt's handwriting was proven to be on the appearance bond in this prior case. Appellant Reinhardt's handwriting was also proven to be on the appearance bond in the case at bar and it was these two samples of handwriting known to be the handwriting of Appellant Reinhardt which enabled the court to make a comparison between the handwriting on the two appearance bonds and the handwriting of the person who recorded the lottery wagers which were seized by the police at the scene of the arrest. * * *"

Bill of Exceptions No. Two was reserved to the trial judge's permitting the introduction in evidence of the affidavit preferred against the defendant in Case No. 142–249, supra.

Defendant contends that he did not put his reputation at issue and that there were no endorsements on the reverse side of the affidavit to show that he was ever prosecuted for the offense charged in Case No. 142–249, supra.

The same reasoning urged in refusing Bill of Exceptions No. One is applicable to Bill of Exceptions No. Two.

Bill of Exceptions No. Three was reserved to the trial judge's permitting the offering in evidence of an Appearance Bond filed in Case No. 142–249, supra. This Appearance Bond bore the signature of the accused, Herbert Reinhardt. Defendant's counsel contends that the signature on the Bond had not been identified as the signature of the defendant, Herbert Reinhardt.

The Bond Clerk, John Costa, testified that all bonds were signed in front of him, and Officer Felix Palmisano testified that he

recognized the defendant as the man against whom the affidavit had been preferred in Case No. 142–249, supra.

The trial judge, who had to weigh the sufficiency of the evidence, declared that defendant's signature on the Appearance Bond filed in Case No. 142–249, supra, had been identified. We agree with him.

■ Bill of Exceptions No. Four was reserved to the trial judge's admitting in evidence certain lottery paraphernalia found by the police when they arrested the defendant for the offense set forth in the present Information. Defendant's counsel contends that the paraphernalia was not connected with the offense; that it was not identified as lottery paraphernalia; and that it was not actively or constructively connected with the defendant.

The trial judge held that the paraphernalia was identified as lottery equipment by Lt. Joseph McDonald, who testified as an expert witness. With respect to defendant's contention that the paraphernalia was not connected with the offense charged, the learned trial judge made the following observation:

"With reference to Paragraph I that the lottery records had not been connected with the date of the alleged offense, the Trial Court respectfully submits that it is not of the essence of the offense, and it was not necessary for the State to show that the gambling statute was violated by Appellant Rein-

hardt on the precise date laid in the Information.

"The circumstantial evidence in the case showed beyond any question that the lottery records were lottery operations of a recent date, if they were not actually current business as of the date of the arrest.

"Sometime in February of 1955, the District Attorney of Orleans filed gambling charges against all known lottery operators in the Parish of Orleans. These prosecutions were on Federal gambling tax records and on the records of the Employment Security Division of the Department of Labor of the State of Louisiana.

"The lottery records seized by the police in this case contained no date, which was quite new and unusual, and the lottery lists were not stamped with the name of a lottery company. The lottery lists were identified by a series of lines or a code marking.

"The expert witness, McDonald, testified that these lottery records were made subsequent to the prosecutions of February, 1955, above referred to. Consequently, these lottery records, beyond any doubt or question whatsoever, were dated circumstantially as recent lottery operations. The fact that a code marking instead of the name of the lottery company issuing the list identified the list showed that this lottery operation

was intended to defeat the force and effect of the Federal and State records as evidence against the lottery operator. The records were further dated, circumstantially, by the fact that they were found by the police on a table in a rear room of the premises. The police officer had just knocked on the front door and Appellant Reinhardt had left the premises by a rear door going to the front. Appellant Reinhardt had just left the room where these lottery records were found by the police on the table.

"The next circumstance is the fact that Appellant Reinhardt was then and there the holder of a gambling stamp as a lottery agent. The Trial Court believes that all of these circumstances taken together establish beyond any doubt that the lottery records were of a recent date, and the evidence very strongly, if not conclusively, show that the lottery records were current business as of the date of the arrest, to-wit: April 11, 1955."

See, also, Article 438, Code of Criminal Procedure; LSA–Revised Statutes 15:438.

There is no merit in Bill of Exceptions No. Four

Bill of Exceptions No. Five was reserved to the trial judge's admitting in evidence an application for information as to whether the defendant purchased a wagering stamp from the United States Gov-

ernment; a letter from the United States Treasury Department, Internal Revenue Service, New Orleans, Louisiana, stating that Herbert Reinhardt was the owner of a wagering stamp, which letter was written and certified to by D. F. Palmisano, Chief Returns Processing Branch; and a bill for $1 for the information furnished.

It is the contention of defendant's counsel that the above documents were inadmissible, unless the authors thereof were produced to testify and be cross-examined.

Section 6107 of the Internal Revenue Code of 1954, 26 U.S.C.A., provides:

"In the principal internal revenue office in each internal revenue district there shall be kept, for public inspection, an alphabetical list of the names of all persons who have paid special taxes under subtitle D or E within such district. Such list shall be prepared and kept pursuant to regulations prescribed by the Secretary or his delegate, and shall contain the time, place, and business for which such special taxes have been paid, and upon application of any prosecuting officer of any State, county, or municipality there shall be furnished to him a certified copy thereof, as of a public record, for which a fee of $1 for each 100 words or fraction thereof in the copy or copies so requested may be charged."

The letter, written by the Chief of the Returns Processing Branch stating that the

defendant had paid a special tax for a wagering stamp covering the period of July 1, 1954 to June 30, 1955, inclusive, was properly certified to and bore the seal of the Internal Revenue Service of the United States Treasury Department. It was given as of public record and was proof that defendant possessed a wagering stamp. Further, we find the following statement in the record:

"It is admitted that if Mr. Gurvich was here he would testify that he obtained these documents; that he saw Mr. Palmisano sign them, and he saw the original records, and he went there with a copy of a letter from the District Attorney's Office to get these signed by Palmisano."

LSA–Revised Statutes 15:422 provides:

"Judicial cognizance is taken of the following matters: * * *

"(4) The accession to office and the official signatures and seals of the public officers of this state and of the United States."

LSA–Revised Statutes 15:457 provides:

"A copy of a document, certified to by the officer who is the legal custodian of the same is equivalent to the original in authenticity; but the certificate of an officer to any matter not under the general powers vested in him is no evidence at all."

The request for the certified letter and the bill for $1.00 which followed showed a compliance with Section 6107 of the Internal Revenue Code of 1954, supra, and they were properly admitted in evidence. It is also to be noted that in admitting the evidence, the trial judge stated:

"Of itself it would prove nothing but with other evidence in the case it is the question of whether it proves anything or whether it supplements the other evidence. The mere fact that the man has the gambling stamp proves nothing, but there is other evidence in this case."

See, State v. Wilson, 141 La. 404, 75 So. 95.

The United States Supreme Court passed upon the admissibility of such documents in the case of Irvine v. People of State of California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561, and it stated:

"Upon his arrest, petitioner had on his person a federal wagering tax stamp bearing his name, home address and the date, * * *. Against objection, it and other documentary evidence from the office of the United States Collector of Internal Revenue was received to show petitioner's application for the wagering tax stamp and his return to the Collector under the federal law. These documents were made pursuant to the Federal Act imposing wagering taxes, 65 Stat. 529, 26 U.S.C. (Supp. V) section 3285 et seq., 26 U.S.C.A. § 3285 et seq., held constitutional by this Court in United States v. Kahriger,

345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. The claim is made that it was error as a matter of federal law to admit this evidence and also that payment of the federal tax resulted in a federal license to conduct the wagering business. This statute does not make such records or stamps confidential or privileged but, on the contrary, expressly requires the name and place of business of each such taxpayer to be made public. 53 Stat. 395, 26 U.S.C. § 3275, 26 U.S.C.A. § 3275. Petitioner's contentions are without substance or merit in view of the express provision of the statute that payment of the tax does not exempt any person from penalty or punishment by state law and does not authorize commencement or continuance of such business. * * *"

The provisions of Article I, § 9, of the Louisiana Constitution of 1921, LSA, which gives to an accused the right to be confronted with the witnesses against him, does not extend to documentary evidence as submitted in the instant case. State v. Donato, 127 La. 393, 53 So. 662; State v. Hardy, 174 La. 458, 141 So. 27.

Bill of Exceptions No. Five is without merit.

Bill of Exceptions No. Six was reserved because the trial court exercised the right to examine the penciled writing and numbers on the lottery paraphernalia and found it to be the same as defendant Reinhardt's handwriting on the Appearance Bonds heretofore discussed.

LSA–Revised Statutes 15:460, providing for the proof of documents other than authentic acts, reads:

"Any document, other than an authentic act, may be proved by any one who saw it written, or by a comparison of hands, or by any one who, from his knowledge of the handwriting of the person alleged to have written the document can testify that the document produced is in the handwriting of said person."

LSA–Revised Statutes 15:460.1 further provides:

"Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses in criminal cases. The writings and the evidence of witnesses respecting the writings may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute."

Since the case was tried by the judge he stands in the place of the jury, and the final decision as to whether the defendant was the writer of the lottery plays rested with him. Therefore, the trial judge did not

assume any power not granted to him by law, and we find no merit in Bill of Exceptions No. Six.

 Bill of Exceptions No. Seven was taken to the trial judge's refusal to grant the defendant a new trial. In his motion for a new trial in the lower court, defendant's counsel incorporated all objections raised in the Bills of Exceptions. In a lengthy per curiam, the trial judge reaffirmed his previous rulings.

Defendant's counsel argues in this Court that the conviction was had without any evidence establishing essentials of the offense charged—namely, "gambling as defined by R.S. 14:90".

As stated in our discussions of the previous Bills of Exceptions, the record does contain evidence of the offense charged. Under Article 516 of the Code of Criminal Procedure, our appellate jurisdiction cannot be invoked to review the refusal to grant a new trial where there is no error of law. State v. Heiman, 227 La. 235, 79 So.2d 78. This suit follows a well recognized rule of evidence—"Circumstantial variety, coupled with substantial unity, is the strongest kind of evidence."

For the reasons assigned, the conviction and sentence are affirmed.

FOURNET, C. J., absent.