Leon **BRENT**

v.

Wingate **WHITE, Warden of the Louisiana State Penitentiary.**

**Misc. No. 965.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Nov. 22, 1967.

Samuel M. Cashio, Bryan E. Bush, Jr., Baton Rouge, La., for petitioner.

Ralph L. Roy, Asst. Dist. Atty., Baton Rouge, La., for respondent.

WEST, District Judge:

Petitioner, Leon Brent, after having exhausted available State Court remedies, applies to this Court for the issuance of a writ of habeas corpus. He is presently incarcerated at Louisiana State Penitentiary awaiting execution of the death sentence imposed upon him after having been found guilty of the crime of aggravated rape. Before this Court he asserts four grounds for his contention that his constitutional rights were violated during his jury trial in the State Court. These grounds are: (1) that he was interrogated from the time of his arrest at about 4:30 p. m. in the afternoon until about noon the following day without the assistance of counsel and that he was forced to confess; (2) that he was forced to give incriminating evidence in that blood samples, scrapings from his penis, and samples of saliva were removed from him for chemical analysis; (3) that during the trial the District Attorney made inflammatory remarks of a racial nature to the jury; and (4) that during the trial, while he was on the witness stand, he was improperly questioned about a prior conviction and that in rebuttal the District Attorney was improperly permitted to introduce evidence pertaining to that prior conviction.

After a hearing before this Court on an order to show cause why the writ should not be granted, the Court was furnished with a full and complete transcript of the testimony taken during the State Court trial. After a thorough review of those proceedings, and after duly considering the arguments of counsel, this Court concludes that there is no merit to petitioner's contentions that his

constitutional rights were in any way violated before, during, or after his trial.

Petitioner first contends that he was improperly held and interrogated without the assistance of counsel and that he was forced to confess. At the outset it must be pointed out that this interrogation took place prior to the rulings in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) held that neither *Escobedo* nor *Miranda* could have retroactive effect. So we must view the circumstances of this case in light of the law as it existed prior to the advent of *Escobedo* and *Miranda.* When viewed in that light, the conclusion must be reached that there was nothing illegal about the interrogation as it was conducted. Petitioner, during the course of the interrogation, asked to see his wife and his mother. He refused to answer certain questions until he talked with them. He was permitted to see them. Even though he now contends that he also requested counsel, the evidence is much more convincingly to the contrary. But in any event, there was nothing obtained from the petitioner during the interrogation which was used prejudicially against him at the trial. As for the so-called confession, the record shows that petitioner voluntarily took the witness stand during the course of his trial and voluntarily testified to everything that was contained in his confession. He was certainly not convicted on the strength of his written confession. But more than that, there is simply no evidence that the confession was coerced or involuntarily given. On the contrary, during the hearing before the Trial Judge, out of the presence of the jury, on the question of voluntariness of the confession, defense counsel stated "I don't think there is any question about the statement as being voluntary," whereupon the District Attorney said "Okay, if you will stipulate that, Sam, that will eliminate all the rest of this." The defense counsel replied "I won't stipulate that, but I mean I think the Court should pass on it. But as far as I am concerned I think it's voluntary, but I don't think it's complete." This Court agrees with defense counsel as to the voluntariness of the confession just as the Trial Court and jury did. There is certainly no evidence that the statement was not voluntarily given, nor is there any evidence of any kind to indicate in the slightest that petitioner was improperly interrogated or in any way denied his constitutional rights during the course of the interrogation.

Petitioner's next claim is that he was forced to give incriminating evidence against himself when the blood sample, penis scrapings, and saliva samples were taken. He claims that all of this was done in violation of his right against self-incrimination as protected by the Fifth Amendment to the United States Constitution. Petitioner voluntarily signed a waiver authorizing the police to take the blood sample, but even if he had not, his contention is disposed of adversely to him by the holding in Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). As stated by the Court in *Schmerber*:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. (Citing case) On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion

which makes a suspect or accused the source of 'real or physical evidence' does not violate it. * * * In the present case, however, no such problem of application is presented. Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as donor, was irrelevant to the results of the tests, which depend upon chemical analysis and on that alone. Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some cumulative act or writing by the petitioner, it was not inadmissible on privilege grounds.

While the Schmerber case dealt only with the taking of blood samples, nevertheless its rationale clearly applies to the evidence obtained from the person of petitioner in this case.

 Thirdly, petitioner complains that the District Attorney made certain inflammatory remarks before the jury. In particular he contends that since he is a member of the Negro race, and the jury was an all white jury, the District Attorney should not have referred to the rape victim as "a white girl." Petitioner does not now argue or contend before this Court that the jury was improperly selected, nor did he urge any such claim before the Courts of Louisiana. For Bills of Exception filed and the rulings thereon by the Supreme Court of the State of Louisiana, see State v. Brent, 248 La. 1072, 184 So.2d 14. On the contrary, counsel for petitioner stated to this Court during argument that he actually had no substantial ground upon which to base his argument for the issuance of a writ of habeas corpus other than the one relative to the alleged improper introduction of evidence pertaining to prior convictions which is hereafter discussed. As to the remarks made by the District Attorney, he merely says that the District Attorney's reference to

"a white girl" was inflammatory. There is no merit to this contention. After all, the victim of the crime took the stand as a witness and it was quite apparent to the jury that she was "a white girl." There was no prejudice to the defendant resulting from this reference to the victim of the crime. The record discloses no other evidence of unlawful prejudicial remarks having been made before the jury.

Defense counsel freely admitted during the hearing before this Court that there was little merit to any of these three contentions. They were urged, however, out of an abundance of caution. The Court also finds no merit to these contentions.

Lastly, however, petitioner, through his counsel, strenuously contends that he was prejudiced and that his constitutional rights were flagrantly violated when the Trial Court allowed the District Attorney to offer evidence of a prior conviction. It is petitioner's contention that when he admitted that he *had* been convicted of a prior offense, the questioning should have ended there. Instead, the District Attorney not only questioned petitioner about the details of the prior conviction, but also presented the testimony of the victim of the prior offense, who was also a white girl. The introduction of this evidence took place as follows. The State did not attempt to introduce the evidence of a prior conviction during its case in chief. But when the defendant voluntarily took the witness stand, the District Attorney, on cross examination, questioned him as to a prior conviction. The Court properly limited the questioning to questions pertaining to convictions as distinguished from arrests or offenses. The petitioner admitted that he had been convicted of disorderly conduct and sentenced to serve sixty days. He was then asked by the District Attorney "Was that disorderly conviction as a result of your insulting a white girl?" This was objected to by counsel for petitioner who contended that when the petitioner admitted a prior conviction, no further evidence could be in-

troduced concerning the details of the offense for which he had been convicted. The Court overruled this objection and stated that under the law of Louisiana the District Attorney could produce evidence pertaining to other convictions, but not as to prior arrests or offenses. The District Attorney then proceeded to produce evidence both by cross-examination of petitioner and later by a rebuttal witness to show that the prior conviction involved a mode of operation used by defendant almost exactly the same as was testified to by the complaining witness in this case.

The complaining witness in this case had testified that the petitioner came into the office where she was working alone and asked her if her boss was there. He said he was looking for a job cleaning offices. He then looked toward a back room and asked what was there and she told him a storeroom. He said that as he was looking for a job cleaning up offices, he would like to look at the back room. He then gave her what he claimed to be his name, which actually was a fictitious name, and phone number, and asked if she would have her boss call him when he came back. While she was writing the name and number down, he, petitioner, locked the front door to the office and looked around to see that no one was in the other offices, and then grabbed her, brandishing a knife, and forced her into the back room where he proceeded to rape her and later cut her with the knife. He then tied her with a rope and left her bleeding on the floor.

Petitioner's story, on the other hand, was that he did, in fact, have sexual contact with the complaining witness, but he insists that no actual penetration or rape occurred. He stated that she enticed him into her office and ordered him to have intercourse with her and threatened him with calling the police and claiming he raped her if he did not do as she ordered. He also admitted cutting her with the knife and tying her up before he left the premises.

The purpose of the testimony concerning the prior conviction was to show that the approach used by the petitioner on a prior occasion, involving a different victim, was a similar approach to that alleged by the complaining witness to have been used in this case.

Whether or not the introduction of this evidence violated the law of the State of Louisiana is of no moment in this habeas corpus proceeding. The only question is whether or not it violated any federally protected rights. This question must be answered in the negative.

There is much doubt that this in any way violated State law in view of the provisions of LSA–R.S. 15:445, 15:446, which specifically provide for the introduction of evidence pertaining to prior similar acts or conduct on the part of the accused, not to prove the offense charged, but to establish intent or a mode of operation. Also LSA–R.S. 15:495, which provides:

"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."

does not seem to preclude the evidence here objected to. Defendant never did "distinctly admit" the nature of the prior offense, and thus it would certainly seem that the testimony pertaining thereto presented by the District Attorney was permitted by this statute. But actually as far as these proceedings are concerned, it is immaterial whether or not the State law was violated if the error complained of did not reach constitutional proportions. The same error here complained of was presented to the Supreme Court of the State of Louisiana

and was decided on the available record adversely to petitioner. State v. Brent, 248 La. 1072, 184 So.2d 14.

Also, in the case of the State of Louisiana v. Harris, 232 La. 911, 95 So.2d 496 (1957), the Court stated:

> "The evidence is clearly admissible to establish guilty knowledge. Evidence of the commission of similar and separate crimes related to and connected with the crime charged is admissible to show guilty knowledge. (Citing Cases and Statutes) * * * In the *Reinhardt* case [State v. Reinhardt, 229 La. 673, 86 So.2d 530] we quoted the following from the case of State v. Montgomery, 170 La. 203, 127 So. 601, 602: 'But, whenever the evidence of the commission of another crime, other than the crime for which the defendant is on trial, is relevant to the question of his guilt or innocence of the crime charged, the evidence of the commission of the other crime should not be excluded merely because of its prejudicial effect.'"

The Louisiana Courts have repeatedly held that in cases dealing with sex crimes, previous sex offenses or crimes will be admissible to show the lustful disposition of the defendant or to show intent, knowledge, or mode of operation. See State v. Cupit, 189 La. 509, 179 So. 837 (1938); State v. Pailet, 246 La. 483, 165 So.2d 294 (1964); State v. Ferrand, 210 La. 394, 27 So.2d 174, 167 A.L.R. 559 (1946); State v. Davis, 158 La. 21, 103 So. 391 (1925).

In Williams v. State, Fla., 110 So.2d 654, cert. den. 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), a case strikingly similar to this case, the Court said:

> " * * * In the immediate case at bar we think the evidence regarding the Judy Baker incident was clearly admissible because it was relevant to several of the issues involved. It definitely had probative value to establish a plan, scheme or design. It was relevant to meet the anticipated defense of consent. At the time when it was offered in the presentation of the State's main case, it had a substantial degree of relevance in order to identify the accused. Finally, it was relevant because it demonstrated a plan or pattern followed by the accused in committing the type of crime laid in the indictment." 110 So.2d at 663.

Such evidence is also admissible in the Federal Courts. In the case of Tandberg-Hanssen v. United States, 284 F.2d 331 (10 Cir. 1960), the Court said:

> "The general rule is that evidence that the accused committed another crime independent of and unconnected with the one for which he is on trial is inadmissible. However, the general rule is subject to a number of well-recognized exceptions. Evidence of another crime is admissible where it tends to establish a common scheme, plan, system, design, or course of conduct and where such other crime is so related to the crime charged that it tends to establish the latter, or tends to establish motive, intent, or absence of mistake or accident." 284 F.2d at 333.

See also Harper v. United States, 99 U.S.App.D.C. 324, 239 F.2d 945 (1956); Fairbanks v. United States, 96 U.S.App. D.C. 345, 226 F.2d 251 (1955). There is nothing in these cases to indicate that the examination must cease when the defendant admits the prior conviction. These cases clearly stand for the proposition that testimony concerning prior offenses may be admitted into evidence for the purposes of showing motive, intent, absence of mistake or accident, or mode of operation. That is exactly what was done in the present case.

Thus, it is the opinion of this Court that the introduction of the testimony complained of did not violate any federally protected rights of the petitioner. Hence, for these reasons, petitioner's application for the issuance of a writ of habeas corpus must be, and it is hereby denied, and petitioner's motion for a stay of execution is also denied.