233 So.2d 906

**STATE of Louisiana**

v.

**John Henry KRELLER.**

**No. 49984.**

Feb. 23, 1970.

Rehearing Denied May 4, 1970.

Andrews & Barry, Dean A. Andrews, Jr., Michael F. Barry, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Cyrus J. Greco, Asst. Dist. Atty., for appellee.

HAMLIN, Justice.

By bill of information filed October 1, 1968, John Henry Kreller was charged with a violation of LSA–R.S. 40:962 on August 5, 1968 "in that he sold a narcotic drug, to-wit: numorphan, to Lt. Coleman Vidrine of the Louisiana State Police Department." He was found guilty, convicted, and sentenced to serve ten years at hard labor in the Louisiana State Penitentiary. He appeals to this Court from his conviction and sentence, presenting for our consideration eleven bills of exceptions reserved during the course of trial.

BILLS OF EXCEPTIONS NOS. 1 and 2

Bills of Exceptions Nos. 1 and 2 were reserved when the trial judge overruled defense counsel's objections to certain statements made by the Assistant District Attorney in his opening statement and denied counsel's motion and amended motion for a mistrial.

In his opening statement, the Assistant District Attorney stated:

"The State will show through the testimony of Lieutenant Coleman Vidrine that on August 5th in the Parish of East Baton Rouge, State of Louisiana, defendant John Henry Kreller did sell two Numorphan tablets to Lieutenant

Coleman Vidrine and was paid the amount of Fourteen Dollars for these tablets. The State will also show through testimony of experts that these tablets were, in fact, Numorphan, they having been analyzed and determined to be. For the purpose of showing system, knowledge, motive and intent the State will show that on August 10th of 1968 in the Parish of East Baton Rouge the defendant, John Henry Kreller, sold two more Numorphan tablets to Lieutenant Coleman Vidrine * * *"

(Objection and motion for mistrial overruled by the court.)

"And the State will show that these tablets were also analyzed to be Numorphan."

Defense counsel contended that the mention of the event, supra, of August 10, 1968 was inflammatory and that the offense was a matter not connected with the corpus delicti; he further contended that the mention of an offense allegedly committed by the defendant subsequent to the date of the offense charged prejudiced the defendant and denied him a fair and impartial trial.

In this Court, counsel for the defendant contends that the State set a procedural-evidentiary trap, lured the defendant into the trap by a bill of information that alleged a distinct violation of LSA–R.S. 40:962, and sprung the trap after lying

in wait until trial by offering in its opening statement to prove another violation of LSA–R.S. 40:962 not set out in the bill of information. Counsel argues that the defendant's constitutional rights were violated by the trial judge's rulings, and that the judge exercised an arbitrary abuse of his judicial discretion. He contends, "It is unconstitutional for the State to prematurely spring the trap by announcing in its opening statement the narcotic transaction charged in the bill of information and then give the jurors notice of second, separate narcotic transaction not included in the bill of information."

Article 770 of West's LSA–C.Cr.P. provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

"* * *

"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible."

An Official Revision Comment under the above article recites the following:

"(c) This article does not prevent admission of evidence of another crime to prove systematic intent as permitted by R.S. 15:445 and 15:446. The article pro-

hibits comments or remarks but not evidence legally admissible."

■ LSA–R.S. 15:444 provides: "If a statute has made it a crime to do a particular act, no further proof of intent is required than that accused voluntarily did the act; and any evidence that he did not know such act to be forbidden by law is inadmissible." LSA–R.S. 40:962, subd. A makes it unlawful for any person to manufacture, possess, have under his control, sell, give, deliver, transport, prescribe, administer, dispense or compound any narcotic drug. The jurisprudence of this Court is now legion, however, that guilty knowledge is an essential ingredient of the crime of possession of narcotic drugs and narcotic paraphernalia. State v. Johnson, 228 La. 317, 82 So.2d 24;[1] State v. Maney, 242 La. 223, 135 So.2d 473; State v. McIlvaine, 245 La. 649, 160 So.2d 566; State v. Clack, 254 La. 61, 222 So.2d 857; State v. Richard, 245 La. 465, 158 So.2d 828; State v. Harris, 232 La. 911, 95 So.2d 496.

LSA–R.S. 15:445 provides that in order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.

LSA–R.S. 15:446 provides: "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." Cf. State v. Schoonover, 252 La. 311, 211 So.2d 273.

In the case of State v. Skinner, 251 La. 300, 204 So.2d 370, Writ of Certiorari dismissed as improvidently granted, 393 U.S. 473, 89 S.Ct. 704, 21 L.Ed.2d 684, the defendants were charged by bill of information in two counts with the illegal possession and sale of marijuana on May 21, 1965. The facts of the case disclose that the District Attorney in his opening statement said: "During the course of the trial the State will introduce evidence of a subsequent sales transaction involving the three defendants to Detective Russell Hebert, an undercover agent, in order to show system, intent, and guilty knowledge, which occurred on May 28,

---

1. "Therefore, guilty knowledge is an essential ingredient of the crime of possession of narcotic drugs. The crime of unlawful possession of narcotic drugs as denounced by law cannot exist without proof of guilty knowledge; for, such possession would not be a possession contemplated by the statute." State v. Johnson, 82 So.2d at p. 30.

1965. * * * these defendants were arrested at a later date when the under cover operation was concluded. * * *" This Court said: "Counsel for the defendants contended that the State should have elected to try the alleged case of May 28, 1965. They argued that there could be no system for the sale of narcotics—not being similar to embezzlement or an offense that presupposes a system. They argued that the mentioning of the events of May 28, 1965 prejudiced the rights of the defendants. Herein, they argue that unless this Court wishes to equate LSA–R.S. 15:446 with an informal 'conspiracy' statute, something should be done to clarify the law quo ad the two aspects presented: 'intent' and 'continuity' of the offense or 'system evidence.'"

■■ In answering defendants' contentions in the Skinner case, we said that the District Attorney's opening statement forms no part of the evidence, has no binding force, and is designed only to give a general acquaintance with the case which will enable the jury to understand and appreciate the testimony as it falls from the lips of the witnesses. We cited State v. Johnson, 228 La. 317, 82 So.2d 24, and commented with approval on its ruling supra; we also mentioned with approval the further statement in the Johnson case to the effect that it is well recognized that exceptions to the general rule—proof of other crimes committed for the purposes of showing intent, knowledge, and system—apply not only to prior criminal offenses committed by the defendant, but also to offenses committed subsequent to the offense charged. We concluded: "Herein, a reading of the testimony attached to Bills of Exceptions Nos. 18, 19 and 21, a discussion of which we find unnecessary, discloses that the State introduced in evidence all testimony and physical evidence pertinent to the instant bills which it had referred to in the district attorney's opening statement. Proof was submitted of all allegations. The testimony adduced and the physical evidence introduced with respect to the transactions of May 28, 1965 (these transactions allegedly took place among *some* of the defendants, not all of them) were a part of the State's proof of the guilty knowledge, intent, and system of selling and possessing narcotics of all defendants. Under such circumstances, we find that the evidence was admissible under an exception to the general rule that evidence of the commission of an offense other than the one with which the defendants are charged is not admissible."

■ We have discussed the Skinner case supra in detail not only because of its relevancy to the instant bills of exceptions but because of its relevancy to this entire prosecution. We conclude from the above statutes, jurisprudence, and the Skinner case that guilty knowledge is an ingredient

of the crime of selling narcotics as well as that of their possession.

■ Herein, defendant was arrested on August 14, 1968, a date later than August 5, 1968, the date the instant offense was allegedly committed, and also later than August 10, 1968, the date a subsequent offense was allegedly committed. In his opening statement supra, the Assistant District Attorney was not springing a trap in mentioning the alleged offense of August 10, 1968; he was merely stating what he intended to prove during the course of trial. As we shall find infra in this opinion, the State was entitled under Skinner supra, LSA–R.S. 15:445, LSA–R.S. 15:446, and the above jurisprudence, to offer proof of an alleged subsequent violation of LSA–R.S. 40:962 by the defendant on August 10, 1968, as well as proof of the offense charged in the bill of information. The Assistant District Attorney apprised the defendant of evidence he intended to introduce to prove system, knowledge, motive, and intent. Defense counsel was able to avoid the element of surprise. Continuance was available to him if needed.

Defendant suffered no prejudice; his constitutional rights were not violated. We find no arbitrary exercise of his discretion by the trial judge.

Bills of Exceptions Nos. 1 and 2 are without merit.

BILL OF EXCEPTIONS NO. 3

■ Bill of Exceptions No. 3 was reserved when the trial judge overruled defense counsel's objection to certain testimony of Lieutenant Coleman Vidrine, Louisiana State Police, as to what transpired immediately after his purchase of narcotics from the defendant on August 5, 1968.

The testimony of Lieutenant Vidrine is as follows:

"A. I gave him the fourteen dollars and received my two tablets of, small blue tablets.

"Q. After you did this did you give, did you have any more conversation with Mr. Kreller?

"A. Yes, sir, I did, we continued to discuss narcotics and Mr. Kreller told me that he was planning on making a purchase of six hundred dollars worth of narcotics but that he was having trouble raising the money.

"Q. Did anything else occur, sir, after this conversation, any more conversation occur?

"A. Well, yes, sir, he said that he was expecting"

(Objection, discussion, and court's ruling)

"A. Yes, sir, Mr. Kreller told me that next time I needed to score.....

"THE CLERK: WHAT?

"A. Score, which is the term for purchasing narcotics, that to give him a phone call and I replied I did, I will."

We find that the trial court correctly overruled defense counsel's objection. It held that Lieutenant Vidrine had "a continuing conversation, one transaction that occurred all at once during the period of the res gestae."

LSA–R.S. 15:447 provides:

"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."

LSA–R.S. 15:448 further provides:

"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." See, State v. Dale, 200 La. 19, 7 So.2d 371; State v. Walker, 204 La. 523, 15 So.2d 874; State v. Reese, 250 La. 151, 194 So.2d 729.

Bill of Exceptions No. 3 is without merit.

## BILL OF EXCEPTIONS NO. 4

Bill of Exceptions No. 4 was reserved when the trial judge overruled defense counsel's objection to certain testimony of Lieutenant Vidrine with respect to events which took place on August 10, 1968.

Defense counsel made the following objection: " * * * This is beyond the square corners of the indictment. It deprives this accused of a fair, impartial trial because no matter how a charge can be made to disregard it, seeds are planted. What transpired after August 5th, if anything transpired, is the subject of another charge that the State has the prerogative of filing against this particular accused." Herein, counsel for the defendant urges the same contentions submitted in Bills of Exceptions Nos. 1 and 2 and urges that it is unconstitutional for the State to forge a bridge, under the guise of res gestae, to link the August 5, 1968 transaction with that of August 10, 1968.

The testimony of Lieutenant Vidrine is as follows:

"Q. Now Lieutenant Vidrine, did you meet the defendant again on another date?

"A. Yes, I did, I met him on * * *

(Objection and Court's ruling)

"Q. What date was this?

"A. This was 10:00 o'clock on approximately August 12th, or it could be the 10th. It was on August 10th.

"Q. Where was this meeting, sir?

"A. This was on the parking lot of the Pak-A-Sak at 5102 Government Street, Baton Rouge, Louisiana.

"Q. Is that in East Baton Rouge Parish?"

(Objection and Court's ruling)

"Q. What happened at that meeting, sir?

"A. I had made a phone call to Mr. Kreller and he advised me that he had some narcotics that he was going to sell me. I then drove over there and I saw him standing in front of the building in the parking lot, at which time I got out of my car, walked up to Mr. Kreller, saying how you doing Johnny? He said fine, Nick, said I got your stuff. At this time he then took a small plastic bottle out of his pocket, his righthand pocket which contained several small blue tablets wrapped in cellophane, piece of cellophane paper. He then took two small blue tablets wrapped in that cellophane paper and gave them to me, saying this will be fourteen dollars, Nick. I then gave him the fourteen dollars and we continued to converse a few minutes more and he said he had to go back to Pace's Beauty Shop, at which time I said I'd see him later and I then left, departed the scene. And after this I dated and initialed the evidence and turned it over to the State Police Crime Lab."

We find that our reasoning set forth supra with respect to Bills of Exceptions Nos. 1 and 2 applies to the instant bill. The above testimony was admissible for the purpose of proving guilty knowledge, intent and system. As stated supra, such are ingredients of the crime of selling narcotics. We do not find that the trial judge committed reversible error in admitting the testimony in evidence; such was relevant evidence. Neither do we find that the testimony prejudiced the defendant so as to deny him a fair and impartial trial.

" * * * The state is not permitted to prove, in a criminal prosecution, that the defendant committed or attempted to commit another crime than that for which he is on trial, when such evidence is not relevant on any other theory than that one who commits one crime is prone to commit another. But, whenever the evidence of the commission of another crime, other than the crime for which the defendant is on trial, is relevant to the question of his guilt or innocence of the crime charged, the evidence of the commission of the other crime should not be excluded merely because of its prejudicial effect. * * *" State v. Montgomery, 170 La. 203, 127 So. 601. See, State v. Reinhardt, 229 La. 673, 86 So.2d 530; State v. Harris, 232 La. 911, 95 So.2d 496.

"Moreover, the evidence of similar crimes, independent of the act charged as a crime in the bill of information, is admissible in order to show intent under Article 445 of the Code of Criminal Procedure, LSA–R.S. 15:445, whether such similar offenses occurred subsequently or prior to the date of the offense charged in the bill of information, provided the evidence of such offense is relevant and material and has some connection with the issue before the judge or the jury. Articles 445 and 446 do nothing more than announce well-recognized rules of evidence in regard to the relevancy of other acts, conduct, and offenses to show intent and knowledge." State v. Haddad, 221 La. 337, 59 So.2d 411. See, State v. Johnson, 228 La. 317, 82 So.2d 24.

Bill of Exceptions No. 4 is without merit.

### BILLS OF EXCEPTIONS NOS. 5, 6, 7 and 8.

Bills of Exceptions Nos. 5 and 6 were reserved when the trial judge refused to grant a new trial and overruled defense counsel's objection to the State's identifying and marking for exhibit certain evidence (Nos. 1 and 2) in this matter.

Bill of Exceptions No. 7 was reserved when the trial judge overruled defense counsel's objection to the identification by Travis Owen, chemist, of an exhibit as numorphan.

Bill of Exceptions No. 8 was reserved when the trial court overruled defense counsel's objection to the offering in evidence of Exhibits Nos. 1 and 2.

We find no merit in these bills. "Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible." LSA–C.Cr.P. Art. 773. Herein, a proper foundation was laid for the admissibility of the evidence, and Exhibits Nos. 1 and 2 were properly admitted.

Bills of Exceptions Nos. 5, 6, 7 and 8 are without merit.

### BILL OF EXCEPTIONS NO. 9.

Bill of Exceptions No. 9 was reserved when the trial judge overruled defense counsel's motion for a mistrial.

During the course of trial the defendant took the stand and testified in his own behalf. On cross-examination, the following testimony ensued:

"Q. Well now, isn't it a fact, sir, that the day you were arrested you were in a motel room shooting some in your arm, isn't that correct?

"A. In a motel room? No, sir, I was not.

"Q. Weren't you in your room shooting some in your arm?

"A. No, sir.

"* * *

"Q. Then you say, sir, it's not a fact that you weren't shooting yourself with * * *

"A. No, sir, I wasn't shooting myself."

After objection, the State said that it was prepared to put evidence on the stand to substantiate the crux of the question that was asked to the defendant.

The State offered the testimony of Major Fred Sliman, Jr., Chief of Detectives for the East Baton Rouge Parish Sheriff's Office; this officer assisted in defendant's arrest. The testimony was offered for the purpose of rebutting defendant's testimony that he was not shooting himself with narcotics at the time of arrest. Not being able to establish the fact of shooting at the time of arrest, the Assistant District Attorney stated to the trial judge that he would not pursue questioning in rebuttal. He stated that the jury should be instructed; the trial judge gave the following instruction:

"* * * Gentlemen of the jury, the court is going to instruct you that the questions, two questions asked by the Assistant District Attorney of the accused when he was on the stand, specifically, in regard to whether he was actually, to the effect whether or not he was actually in the act of injecting a needle into his arm with a syringe containing a narcotic is to be disregarded by you and any inference arising therefrom must be put out of your mind and you must disregard it as having no bearing on the case on the guilt or innocence of the accused. You must again, as I remind you, consider only the testimony and actual evidence that you hear presented in the case. These are merely questions presented to the accused, which he denied, by the Assistant District Attorney. The District Attorney has not offered any proof at this time in regard to those questions. They were merely questions to the accused, which the accused denied, and you must disregard any inference thereform as bearing on his guilt. Put them out of your mind in weighing the evidence."

Counsel for the defendant contends that the State cannot constitutionally, under the guise and pretext of impeachment or testing credibility, propound questions to a witness that are illegally designed to communicate to the jurors inadmissible subject matter—thereby destroying the mantle of protection accorded the witness by law.

Article 771, LSA–C.Cr.P., provides that on motion of the defendant, in certain cases, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. See, Article 770, LSA–C.Cr.P.

We do not find that the defendant was prejudiced by the testimony adduced from him. We find that the admonition of the trial judge supra was entirely sufficient to cure any doubt in the jurors' minds. The instructions were clear and unambiguous. Under such circumstances the trial judge was correct in refusing to grant a mistrial.

The case of State v. Perkins, 248 La. 293, 178 So.2d 255, is not apposite to this prosecution. In that case the defendant suffered prejudice from the improper presentation of testimony.

Bill of Exceptions No. 9 is without merit.

## BILL OF EXCEPTIONS NO. 10.

Bill of Exceptions No. 10 was reserved when the trial court denied defendant's motion for a new trial.

The motion for a new trial avers that new evidence of a material nature was discovered after trial; it is averred to be of a nature which could change the verdict. The evidence is stated to be a prescription from Dr. Leggio dated July 27, 1968.

During the course of trial, the defendant testified that he consulted Dr. Anthony Leggio for a kidney ailment. He said that the doctor wrote a prescription in the name of John Henry Kreller, and that the prescription was for numorphan. The drug was to be taken four times a day for pain.

At the conclusion of the trial, counsel for the defendant stipulated that, " * * * Dr. Leggio, who is under instanter subpoena, that if he was brought before this court, sworn in and testified, would testify to this effect: One, that he did not examine the defendant; two, that he did not write a prescription for numorphan."

Under the above circumstances, we find that the trial judge correctly refused to grant a new trial on the ground of newly discovered evidence. The other grounds averred in the motion for a new trial have been discussed in bills of exceptions supra.

Bill of Exceptions No. 10 is without merit.

## BILL OF EXCEPTIONS NO. 11.

Bill of Exceptions No. 11 was reserved when the trial judge refused to permit the defendant to begin serving his sentence in the Louisiana State Penitentiary pending appeal.

The permission sought by the defendant to begin serving his sentence pending appeal is a matter entirely within the discretion of the trial judge. Here he exercised a judgment not to grant the defendant's request. Cf. Article 913, LSA–C.Cr.P. We find no error.

For the reasons assigned, the conviction and sentence are affirmed.