301 So.2d 344 (1974)
STATE of Louisiana
v.
Newton GASPARD.
No. 54003.
Supreme Court of Louisiana.
March 25, 1974.
On Rehearing October 11, 1974.
*345 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Eddie Knoll, Dist. Atty., Jeannette Theriot Knoll, Asst Dist. Atty., for plaintiff-appellee.
John T. Bennett, Marksville, for defendant-appellant.
SUMMERS, Justice.
The grand jury of Avoyelles Parish returned an indictment on May 17, 1973 charging that Newton Gaspard attempted to murder his wife on February 17, 1973 by cutting her with a knife. After pleading not guilty he was tried by a jury of twelve, found guilty as charged and sentenced to serve five years in the custody of the Louisiana Department of Corrections, with credit for time served. Thirteen bills of exceptions were reserved and perfected. They are urged on this appeal to reverse and set aside the conviction and sentence.

Bill 1
During voir dire examination of the prospective jurors, defense counsel asked a prospective juror if he knew what aggravated battery was. The Assistant District Attorney objected that aggravated battery had nothing to do with the casethat it was not a responsive verdict. Whereupon, defense counsel explained that he was asking the question to ascertain whether the prospective juror could distinguish between attempted murder and aggravated battery. The trial judge sustained the objection, ruling that aggravated battery was not a responsive verdict and, we infer, was therefore not relevant to the prosecution before the court.
Defendant argues that the question was relevant since, if the jury had decided that defendant's acts constituted aggravated battery, they would not have found him guilty of attempted murder. However, as the State correctly points out, a verdict of not guilty requires only that defendant did not commit the crime of attempted murder; the jury need not find that he in fact committed another crime. Other crimes were not relevant to this prosecution.
Article 786 of the Code of Criminal Procedure vests the trial court with broad discretion for regulating voir dire examination. State v. Taylor, 282 So.2d 491 (La.1973); State v. Coleman, 260 La. 897, 257 So.2d 652 (1972). We find no abuse in the discretion allowed the trial judge in this ruling.
This bill is without merit.

Bill 2
During the prosecutor's opening statement, defendant objected and moved for a mistrial when the prosecutrix made reference to another offense she would show for the purpose of establishing defendant's intent, specific intent being an essential element of the crime of attempted murder. The contention is that reference to another offense in the opening statement is an automatic ground for a mistrial. Reliance is placed upon Article 770 of the Code of *346 Criminal Procedure, which provides in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible."
As the Official Revision Comment (c) to this article points out, this prohibition against reference to another crime does not prevent admission of evidence of another crime when the purpose is to prove intent under the authority of Sections 445 and 446 of Title 15 of the Revised Statutes. The article prohibits comments or remarks but not evidence legally admissible. State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. Lawrence, 251 La. 1085, 208 So.2d 685 (1968); State v. White, 247 La. 19, 169 So.2d 894 (1964).
Here the State had advised defense counsel prior to trial that it intended to introduce evidence of another offense to establish intent. Moreover, in fairness, the State sought, in general terms, to explain the nature of the evidence by which it expected to prove the charge. La.Code Crim.Proc. art. 766. Reference to the prior offense was part of that explanation.
This bill has no merit and the trial judge properly denied the mistrial.

Bill 3
In his opening statement the District Attorney made reference to a letter written by defendant which the State intended to offer in evidence to show intent. Defense counsel objected, was overruled, and reserved this bill.
In the letter written to his wife, defendant had given his wife until Saturday, February 17, 1973, the date of the alleged crime, to come back to him "or else". Defense counsel asserts that the letter is an inculpatory statement and that he had no prior notice that the State intended to introduce an inculpatory statement in evidence. La.Code Crim.Proc. art. 768. It is also argued that this reference to an inculpatory statement is a violation of Article 767 of the Code of Criminal Procedure, which prohibits the State, in the opening statement, from adverting in any way to an inculpatory statement made by the defendant.
The term "inculpatory statement" as used in Article 768 refers to an out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to events which have in fact transpired. State v. Curry, 263 La. 997, 270 So.2d 484 (1972); State v. Fink, 255 La. 385, 231 So.2d 360 (1970). Since the letter was written prior to the alleged crime, it is not an inculpatory statement contemplated by Article 768, and the prohibition against reference to inculpatory statements in the opening statement does not apply.
This bill has no merit.

Bills 4, 5, 6, 7
These bills were taken to the introduction of certain photographs over objection by the defense that they were gruesome, unnecessary and prejudicial. The photographs depicted Mrs. Gaspard with her throat bandaged, the automobile in which the incident occurred, blood stains in the automobile, blood stains on the lawn, and the residence in front of which the car was parked. After a review of these photographs, they are found to be relevant and not unduly prejudicial. See State v. Hall, 256 La. 336, 236 So.2d 489 (1970), holding: "The fact that objects or photographs constitute or portray a repulsive spectacle and tend to prejudice the jury furnish no valid grounds for their exclusion where they are otherwise relevant. State v. Hamilton, 249 La. 392, 187 So.2d 417 (1966)."

*347 Bill 8

This bill was reserved when the defense objected to the introduction of the "inculpatory" letter and the objection was overruled. The objection is based upon the contention that defense counsel was not given reasonable notice that the letter would be used; nor was he furnished with a copy of the letter.
Defense counsel is in error as to the factual basis of his contention, or he has overlooked the fact that on June 11, 1973, before the opening statement, he was furnished with a written notice of intention to introduce an inculpatory statement in compliance with Article 768 of the Code of Criminal Procedure. The original of this notice was filed that day in the record of these proceedings and the minutes also reflect this fact. Defense counsel does not contend, and the record does not reflect, that he requested that he be furnished a copy of the inculpatory statement at any time.
This bill has no merit.

Bill 9
While cross-examining Cheryl Bordelon in an effort to show that the witness was biased, defense counsel asked the witness if she had not told him that she wanted her daddy (the accused) to go to the penitentiary, to which she replied, "No, I didn't tell you that ... I told you that he deserved to be punished for what he did." At this point the Assistant District Attorney objected, stating:
"... This is highly confidential... that when she had a little discussion, I think it's a little improper too... you know, we can bring out the plea bargaining arrangements ... what this man wanted to plead to, you know ... if he wants to start getting that ... disclosing to. And that would be not proper too...."
Defense counsel objected to this statement by the Assistant District Attorney for it adverted to a plea bargaining arrangement in which the defendant was purportedly involved with the District Attorney. Defense counsel also moved for a mistrial. Although the trial judge sustained the objection, he denied the mistrial. The trial judge did, however, instruct the jury to disregard any statement about a plea bargain, for it was not evidence but a statement of the lawyers. This bill was reserved to the ruling. No further evidence of plea bargaining was received at the trial. Defense counsel did state in argument that an offer was communicated to him, which he refused. Further, he argues that the jury, having heard that defendant was involved in plea bargaining, would not afford him the presumption of innocence to which he is entitled.
On the other hand, the State asserts that this error, if it was such, did not prejudice the defendant, and it was therefore harmless. To support this position the State argues that plea bargaining is a legal term which the jury does not understand. According to the State, the other evidence at the trial (not shown by this record) also negatives the possibility that harm ensued as a result of the reference to plea bargaining. Defendant admitted cutting his wife's throat (saying it was an accident), signed a confession and admitted his daughter's testimony to be true notwithstanding that it gave a version of the facts which would not support his defense that the cutting was an accident. And, finally, the State submits that polling of the jury revealed that the twelve man jury rendered a unanimous verdict.
Reference to plea bargaining in which the defendant was purportedly involved made within the hearing of the jury by the Assistant District Attorney in argument during the trial is not listed as the type remark or comment which furnishes ground for a mistrial under Article 770 of the Code of Criminal Procedure. Those grounds which are listed, such as reference *348 to race, another crime, failure of the defendant to testify, etc., are not cured by an admonition to the jury to disregard the remark or comment unless the defendant requests the admonition. Normally, other remarks or comments which are considered objectionable, as perhaps prejudicial, may be cured by an admonition. Reference to a plea bargain would fall within this latter class.
The only case our research has turned up on the subject which is to some extent on point, in this State, is State v. Joyner, 228 La. 927, 84 So.2d 462 (1955). There the defendant contended that he was improperly convicted for the reason that the trial judge permitted, during the trial and over his objection, the introduction of evidence of the minutes of the court reflecting the fact that he had previously pled guilty to the charge before the court, and the plea had been withdrawn and a not guilty plea entered with the court's approval.
The court concluded that the introduction of evidence of minute entries disclosing the former plea of guilty and its withdrawal constituted reversible error, saying: "It could have no other effect than to prejudice the jury."
Significantly Article 770 of the Code of Criminal Procedure does not include reference to a plea bargain or to the more damaging guilty plea as one of the prejudicial remarks which forms a basis for a mistrial. By excluding such remarks the redactors, we conclude, felt that they could be cured by an admonition to the jury to disregard them. La.Code Crim.Proc. art. 771; State v. Cormier, 272 So.2d 686 (La.1973); 53 Am.Jur., Trial, 506. There is, therefore, no violation of a statutory right by the remark of the Assistant District Attorney, La.Code Crim.Proc. art. 921.
Although few of the facts involved in the Joyner Case are recited in the opinion, we are able to discern certain differences warranting a distinction in that case from the case at bar. The remark in the case at bar was spontaneous in argument and the trial judge had no opportunity to prevent the utterance. In the Joyner Case, however, a formal documentthe minutes of courtrecording the guilty plea was admitted into evidence over defense objection.
The minutes of court in the Joyner Case record a judicial admission of guilt and left no room for doubt that the defendant had previously pled guilty to the crime for which he was being tried. Here, however, the nature and details of the plea bargaining were never revealed; only an oblique reference was made. While we are unable to accept the State's position that the jury did not understand what plea bargaining meant, we are likewise unable to accept the defense contention that the oblique reference to plea bargaining in this case resulted in undeniable prejudice to the defendant in the minds of the jury which could not be removed by an admonishment to disregard the remark.
Defense counsel emphatically denied in the course of his argument in support of his objection that his client had entered into any plea bargains, although he did concede that a bargain had been offered his client but refused. This denial had the undoubted effect of minimizing to a considerable extent any prejudicial effect the defendant may have incurred as a result of the Assistant District Attorney's reference to plea bargaining. This denial by defense counsel inferentially bolsters defendant's presumption of innocence. This, coupled with both the admonition of the judge in the case at bar, which did not occur in the Joyner Case, and with the oblique and indefinite character of the reference to plea bargaining, establishes a significant distinction between this case and the Joyner Case. We are not convinced that the remark influenced the jury and contributed to the verdict. La.Code Crim.Proc. art. 921; State v. Cormier, 272 So.2d 686 (La. 1973); State v. Clouatre, 262 La. 651, 264 *349 So.2d 595 (1972); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. Thomas, 161 La. 1010, 109 So. 819 (1926); State v. Ailes, 133 La. 563, 63 So. 172 (1913).
This bill has no merit.

Bill 10
When the State questioned defendant's daughter as a witness, an effort was made to introduce evidence that on January 1, 1973, prior to the cutting on February 17, 1973, the defendant attempted to kill his estranged wife by colliding his pick-up truck with her automobile. As a result the wife's automobile was run off the road and wrecked. At the time the wife, who was a practical nurse, had other nurses as passengers in her car. The stated object of this evidence, given outside the presence of the jury, was to prove intent under the authority of Sections 445 and 446 of Title 15 of the Revised Statutes,[1] specific intent being an essential element of the crime of attempted murder.
Defense counsel objected to any evidence of the January 1st offense on these grounds: 1) he was not furnished with notice that this evidence would be used to prove intent within a reasonable time; 2) the January 1, 1973 incident was not a similar act; 3) the same modus operandi was not used; and 4) the other offense was too remote in point of time to be similar. The trial judge overruled the objections and noted that the State would be permitted to introduce evidence of this other offense for the limited purpose of showing intent.

Notice in time
A detailed notice of the facts constituting the prior offense was served on defense counsel on June 7, 1973 and filed in the record of these proceedings on June 8, 1973. The trial began on June 12, 1973. At no time prior to trial did defense counsel object to the content of the notice or move that he required additional time to prepare to defend against the State's evidence. Under these circumstances the notice was served within a reasonable time.

Similar act
The offenses were sufficiently similar to satisfy the requirements of Sections 445 and 446 relative to the admissibility of other acts to show intent. Both offenses involved attempts to murder; each concerned the defendant as the assailant and his estranged wife as the intended victim; both offenses related to acts of violence and physical injury was inflicted on the estranged wife in each instance. The evidence sought to be introduced here is of particular significance to dispel the defense contention that he cut his wife's throat accidentally. (He said he was cleaning his fingernails with a knife when he grabbed for a gun which she held, accidentally cutting her throat.) State v. Johnson, 228 La. 317, 82 So.2d 24 (1955).

Modus operandi
The objection that the same modus operandi was not employed in the two offenses does not detract from the similarity requirement if there are other features associated with the two offenses which demonstrate a like motive or intent. Modus operandi may be important to prove a system; it is not necessarily essential to prove intent.

*350 Time between offense

One and one-half months prior to the February 17 offense charged, defendant wrecked his wife's car, according to the notice, in an attempt to murder her. The time between offenses cannot be determined by a fixed rule but must depend upon the facts and circumstances of each case. Considering the nature and character of these two offenses and the status and habits of the parties involved, the time lapse here was not such that evidence of the other offense should be excluded.
In addition, defense counsel requested, and the trial judge ruled, that the evidence of the January 1 offense be permitted, if otherwise admissible, for the sole purpose of showing intent in the crime charged. Defense counsel also requested, and the trial judge agreed, that the jury be charged that the evidence was to be received for the limited purpose of proving intent. The trial judge agreed to charge the jury that the defendant could not be convicted for any offense other than the one named in the indictment, or one for which a responsive verdict could be returned. Although the bill of exceptions does not have attached the testimony and evidence of the February 17 offense, or the charge to the jury, which we assume took place later, this ruling of the trial judge, which the record does support, is correct.

Bill 11
According to this bill, the issue it presents is moot.

Bill 12
Defendant took the stand to testify in his own behalf. While he was being cross-examined, the District Attorney asked him: "Now, as a result of that automobile accident, isn't it a fact that you are charged with attempted murder?"; to which question defense counsel objected and moved for a mistrial. He argues that reference to pending criminal charges is reprobated by the following language of Section 495 of Title 15 of the Revised Statutes: ".... No witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction...."
The State contends, however, that Sections 445 and 446 of Title 15, permitting evidence of other similar offenses to prove intent, establish an exception to the rule of Section 495 that a witness cannot be cross-examined concerning indictments or arrests. The question was asked, according to the State, not to impeach the defendant but, instead, to elicit testimony which would tend to prove another offense in turn proving intent, an essential element of the crime for which defendant was being tried.
When the issue was thus formed the trial judge sustained the objection. However, he denied the mistrial and immediately admonished the jury to disregard reference to the fact that the defendant had been charged with attempted murder in connection with the automobile collision incident. This bill was reserved to the ruling. The bill has no merit.
Evidence of prior offenses is admissible under Sections 445 and 446 as an exception to the prohibitions in Section 495. By this same reasoning evidence of arrests or pending charges relating to those other offenses should also be admissible as an exception to the prohibition in Section 495 against cross-examination concerning indictment or arrests. That is to say, when the evidence of arrests or indictment has independent relevance to corroborate evidence of another offense, which other offense establishes intent, then it should be allowed. Cf. State v. Lewis, 236 La. 473, 108 So.2d 93 (1959). The reference to pending charges in the instant case was not for the purpose of attacking the witness's credibility, or impeachment, and that reference should not, therefore, fall *351 within the prohibition of Section 495. See State v. Reinhardt, 229 La. 673, 86 So.2d 530 (1956).
Moreover, the ruling of the judge denying the State the right to proceed with the questioning, the fact that the witness was not compelled to answer and the prompt admonition to the jury by the trial judge further supports our conclusion that no error occurred. State v. Maney, 242 La. 223, 135 So.2d 473 (1961).

Bill 13
A motion for a new trial was filed on behalf of defendant. Reiterating the issues the bills of exceptions present it is alleged that even if the court should find the individual bills of exceptions to be without merit, the prejudice resulting from the cumulative effect of all bills should warrant the granting of a new trial. As our consideration of the individual bills of exceptions will disclose, no prejudice or error was committed. The cumulative effect does not change that conclusion.
The motion for a new trial further alleges that the law and the evidence clearly indicate that there was reasonable doubt as to defendant's guilt. Guilt determination is a question for the jury and cannot be considered on appeal.
The motion further urges that error was committed when the trial judge failed to instruct the jury that the crime of attempted murder required a specific intent to kill. The charge to the jury is not part of this record, nor is it attached to a bill of exception showing a requested instruction was refused or an objection made to the charge. The question presented by the motion cannot, therefore, be considered. La.Code Crim.Proc. arts. 844, 920.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents with written reasons.
TATE, J., dissents for the reasons assigned by Mr. Justice BARHAM.
DIXON, J., dissents.
BARHAM, Justice (dissenting).
The majority opinion is contradictory and discusses matters which are not only not a part of the "record" but are totally absent from the appeal lodged with us. Thus, it is most difficult to pen a dissent on the actual issues presented for our determination.
Under Bill of Exceptions No. 3, the majority determines that a letter which contained threats against the victim, purportedly written by the defendant before the crime, is not an inculpatory statement. Under a discussion of this bill, the majority concludes that "inculpatory statement" as used in Code of Criminal Procedure Articles 767 and 768 does not refer to an out of court admission made prior to the commission of an offense. The statement in question in this case is a written inculpatory statement. C.Cr.P. Art. 703 permits a defendant to move to suppress "* * * written confession or written inculpatory statement, on any ground that would make it inadmissible as evidence. * * *" (Emphasis here and elsewhere supplied). The comments under Article 703 state that the article "* * * does not affect the operation of Art. 767, prohibiting advertence to any confession or inculpatory statement in the state's opening statement, not Art. 768, requiring notice to the defendant of intention to introduce a confession or inculpatory statement. * * *"
Generally, writers on evidence speak of confessions, admissions and declarations against interest. See McCormick on Evidence, §§ 144, 262, and 276, Cleary Ed. (1972), 3 Wignore, Evidence, (Chadbourn rev.) § 821, 4 Wigmore, Evidence, §§ 1048-1087, and 5 Wigmore, Evidence, §§ 1455-1477. "Inculpatory" is used merely to distinguish between declarations against interest and other admissions which are *352 exculpatory. It can have no special meaning in the context of the articles we are discussing, unless it refers to declarations against interest. "Declarations against interest", like "confessions", are hearsay, but both, under proper circumstances, are exceptions to the hearsay exclusionary rule. Since certain requirements must be met for the admission of declarations against interest, i. e., inculpatory statements, I can see no reason for distinguishing between anteand post-crime inculpatory statements. Nothing in Articles 767 or 768 indicates that "inculpatory" statement is a post-crime statement. Certainly, nothing in Article 703 makes such a distinction.
The confused and contradictory position of the majority is made apparent in its discussion of Bill of Exceptions No. 8. Under this bill the defendant objected to the introduction into evidence of the same written statement which under Bill of Exceptions No. 3 he had complained could not be referred to in the opening argument of the State because it was an inculpatory statement. The majority says that the defendant "* * * was furnished with a written notice of intention to introduce an inculpatory statement in compliance with Article 768 of the Code of Criminal Procedure * * *." The majority then concludes that the defendant cannot complain that he did not have reasonable notice that the letter would be used. He was thus not prejudiced because the notice of use of inculpatory statements filed in compliance with Article 768 told him that the letter would be used.
Is the letter an inculpatory statement or is it not? The majority excludes the letter from Article 768 under Bill of Exceptions No. 3 as not being an inculpatory statement, and then immediately includes the letter as an inculpatory statement under Article 768 in its consideration of Bill of Exceptions No. 8. I am at a loss to answer this discriminatory treatment of the same piece of evidence.
If I am correct in finding no legal basis for including pre-crime inculpatory statements (declarations against interest), then the district attorney, in making reference before the jury in opening argument to the letter written by the defendant before the crime, committed error.
However, I am more concerned with another statement made during the trial and also with a question posed by the district attorney during the trial as constituting prejudicial error to the extent of requiring a reversal.
The district attorney, in objecting to cross-examination of a witness, apparently became inflamed and antagonistic and remarked before the jury, as is noted in the majority opinion in their discussion of Bill of Exceptions No. 9: "* * * you know, we can bring out the plea bargaining arrangements ... what this man wanted to plead to, you know ... if he wants to start getting that ... disclosing to. * * *" Defense counsel immediately objected and moved for a mistrial because the district attorney made the statement about the plea bargaining and alluded to what the man wanted to plead. Instead of ordering the mistrial, the court instructed the jury to disregard the statement. After much discussion, the majority admits:
"* * * While we are unable to accept the State's position that the jury did not understand what plea bargaining meant, we are likewise unable to accept the defense contention that the oblique reference to plea bargaining in this case resulted in undeniable prejudice to the defendant in the minds of the jury which could not be removed by an admonishment to disregard the remark."
Preliminarily, the remark was not in my opinion oblique. It was a direct and pointed remark suggesting not only a plea bargaining, but an offer to plead to a more serious offense.
Since the majority has admitted error, I need only discuss their methods of calculating that this was harmless error. The majority first attempts to excuse the *353 State's error here by declaring that the grounds for mistrial because of a remark or comment by an officer of the court are exclusively stated in C.Cr.P. Art. 770. They find the remark made by the district attorney here is not included in one of the four examples of incurable prejudicial remarks contained in Article 770 and with that I agree. However, the majority further states, and erroneously, "* * * by excluding such remarks [from Art. 770] the redactors, we conclude, felt that they could be cured by an admonition to the jury to disregard them. * * *" The majority's error results from failure to read the next article of the Code of Criminal Procedure. Article 771 provides: "* * * the court shall promptly admonish the jury to disregard a remark or comment made during the trial, * * *:
"(1) When the remark or comment is made by the judge, the district attorney or a court official, and the remark is not within the scope of Article 770; or
"(2) * * *
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."

The majority has cited the jurisprudence which explicitly shows that the remark with which we are concerned requires a mistrial, State v. Joyner, 228 La. 927, 84 So.2d 462 (1955). The court there held:
"It is our conclusion, therefore, that the introduction in evidence of minute entries disclosing the former plea of guilty and its withdrawal constitutes reversible error. It could have no other effect than to prejudice the jury."
I am of the opinion that a district attorney cannot avoid the censure which falls upon the State in the form of reversible error by stating a fact instead of proving a fact. The prejudice is the same. The fact that the defendant plea bargained and had offered to plead to perhaps a more onerous crime, lies naked before the jury as an admission of guilt. This statement strips the flimsy cloak of innocence off the defendant and exposes his naked guilt to their minds.
Then the majority attempts to give another reason for finding harmless error, utilizing methodology which I have never observed before under any rule for finding error to be harmless. This Court has already invoked the federal harmless error rule to examine a transcript of testimony to determine if guilt were otherwise established so as to make the error complained of harmless. They have resorted to evidence which was not a part of the record through attachment to or by reference in a bill of exceptions as is required by C.Cr.P. Art. 920 and Art. 844. Here, however, the majority has resorted to statements by the district attorney in brief or in argument to examine what they say was the evidence at the trial. The bills of exceptions which are presented to us present sparse, brief, and incomplete excerpts of testimony. Apparently looking for harmless error, the majority states:

"According to the State, the other evidence at the trial (not shown by this record) also negatives the possibility that harm ensued as a result of the reference to plea bargaining. Defendant admitted cutting his wife's throat (saying it was an accident), signed a confession and admitted his daughter's testimony to be true notwithstanding that it gave a version of the facts which would not support his defense that the cutting was an accident. And, finally, the State submits that polling of the jury revealed that the twelve man jury rendered a unanimous verdict."
I am amazed that a majority opinion would find that the defendant admitted cutting his wife's throat, that he signed a confession admitting his daughter's testimony was true, and that the 12-man jury rendered a unanimous verdict when there *354 is not one shred of evidence to support such a finding in all the material lodged here on appeal.
If this is to be the final resting place of Louisiana's harmless error rule, then I declare myself forever opposed to a deviation from our positive codal statement that reversal shall come in any case when it appears that the error complained of results in one of the following conditions: "* * * has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitution or statutory right." C.Cr.P. Art. 921.
Finally, the majority tries to reinforce its harmless error argument by complimenting defense counsel and using defense counsel's expertise in argument to find a lack of prejudice in the State's error. I have never heard or read a legal contention that defense counsel's argument can overcome a prejudicial inference in the jurors' minds. The majority, however, states in this case:
"Defense counsel emphatically denied in the course of his argument in support of his objection that his client had entered into any plea bargains, although he did concede that a bargain had been offered his client but refused. This denial had the undoubted effect of minimizing to a considerable extent any prejudicial effect the defendant may have incurred as a result of the Assistant District Attorney's reference to plea bargaining. This denial by defense counsel inferentially bolsters defendant's presumption of innocence. * * *"
I am of the opinion that the Joyner case is totally apposite to the issue here; that admonition to the jury by the court was insufficient to cure the error; that substantial rights of the accused were prejudiced; and that there was a substantial violation of a statutory right. It constitutes reversible error.
My last objection is, in my opinion, irrefutable. Defendant reserved Bill of Exceptions No. 12 to a refusal to sustain his objection and motion for mistrial when the district attorney asked the defendant on cross-examination, "Now, as a result of that automobile accident, isn't it a fact that you [were] charged with attempted murder?; * * *." R.S. 15:495 states that "* * * no witness, whether he be defendant or not, can be asked on cross-examination whether or not be has ever been indicted or arrested, and can only be questioned as to conviction, * * *." The majority excuses this question, saying that a defendant may be questioned about an indictment, under R.S. 15:445 and R.S. 15:446, which allow proof of prior acts or offenses under the stated exceptions there. However, these statutes do not permit evidence to be presented to a jury that one has been indicted for other acts or offenses. It merely allows proof of the other acts or offenses.
The majority says this question was not posed for the purpose of attacking the credibility of the witness or for impeachment, but was posed to prove an element of the crime for which he was charged. A grand jury indictment or a district attorney's bill of information in another case, which has not resulted in a conviction, is not admissible evidence under any exception. I cannot believe that this Court will go so far as to permit the State to taint the minds of the jurors by introducing evidence that one has been charged, indicted or billed for some other crime. Nor can I believe that this Court will hold an accusation of another crime as proof of an element of the crime charged. The law is so clear, concise and without variance on this issue that it is futile to cite all the authority which supports my view. If the district attorneys in the State of Louisiana have not learned at least one rule of law, that is, that charges and accusations of other offenses are not admissible for any reason against a defendant, then I am totally amazed. Perhaps I should be more amazed that the majority has not learned that rule of law. Evidence of the accusation of another crime filed against the defendant, *355 by bill of information or indictment, is prejudicial and reversible error.
I am of the opinion that for the reasons I have assigned, the majority has erred and this conviction should be reversed.

ON REHEARING
BARHAM, Justice.
The defendant was tried under a grand jury indictment for the attempted murder of his wife. He was found guilty as charged and sentenced to serve five years in the custody of the Louisiana Department of Corrections.
Although thirteen bills of exceptions were preserved and perfected, we pretermit a discussion of most of those bills since we find reversible error in two specific bills of exceptions.
Bills of Exceptions Nos. 9 and 12 were reserved when defense counsel requested mistrials, alleging that the district attorney had made incurable prejudicial remarks contrary to specific statutory provisions.
On original hearing, the majority of this Court found that both of these remarks constituted error but concluded that they were harmless error and that admonition to the jury to disregard the remarks was sufficient in each case. We conclude on this hearing that the errors require reversal under C.Cr.P. Art. 921.
Code of Criminal Procedure Article 770 lists four examples of incurable prejudicial remarks which require the granting of a mistrial. The majority, on original hearing, concluded that the redactors had excluded from Article 770 the specific remarks made during this trial because the prejudicial effects of these remarks could be cured by admonition to the jury to disregard them. However, Code of Criminal Procedure Article 771 provides: "* * * the court shall promptly admonish the jury to disregard a remark or comment made during the trial, * * *:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) * * *

"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial." (Emphasis here and elsewhere supplied.)
The first error occurred during defense counsel's examination of a witness. The district attorney interrupted the cross-examination and the following exchange occurred:
"BY THE ASSISTANT DISTRICT ATTORNEY:
.... (INTERRUPTION)....Your Honor,.....excuse me... I'm going to object.......
"BY MR. BENNETT:
I want to show bias........
"BY THE ASSISTANT DISTRICT ATTORNEY:
(Interruption).... This is highly confidential... that when she had a little discussion, I think it's a little improper too.... you know, we can bring out the plea bargaining arrangements ... what this man wanted to plead to, you know... if he wants to start getting that.... disclosing to. And that would be not proper too........
"BY MR. BENNETT:
(Interruption) ..... Your Honor, I object and move for a mistrial because of the statement of the assistant district attorney that we entered into any plea bargaining, because we did not and I move for a mistrial ... even if we did, I think we would be entitled to grounds for a mistrial.
*356 "BY THE COURT:
All right. The Court will instruct the jury to disregard the .... any statement about a plea bargaining and etc... this is not evidence ... it's statements of the lawyers .... disregard that. The objection is good. I will sustain the objection. No references is to be made of such conversation and the Court holds that you can examine her as to any statements that she made to you on the occasion that she called at your office, the day of the preliminary examination.
"BY MR. BENNETT:
And the Court overrules my motion for a mistrial?
"BY THE COURT:
Yes, sir. I deny the motion.
"BY MR. BENNETT:
To the Court's ruling, I respectfully object, reserve a bill of exception...."
In State v. Joyner, 228 La. 927, 84 So.2d 462 at 464 (1955), this Court held:
"It is our conclusion, therefore, that the introduction in evidence of minute entries disclosing the former plea of guilty and its withdrawal constitutes reversible error. It could have no other effect than to prejudice the jury."
The redactors, in Official Revision Comment (b) to Article 771, state that the article merely purports to carry out the jurisprudential rules with respect to comments and remarks that can be cured by an admonition. Louisiana had already adopted and it maintains the majority view of this country that evidence or statements before the jury attributable to the State concerning a former plea of guilty to the charge under which the defendant stands trial is reversible error. 3 Wharton's Criminal Evidence, 13th ed., § 670 at 431, n. 61.
The office of the district attorney cannot avoid the censure which falls upon the State in the form of reversible error by stating a fact instead of proving a fact. The prejudice is the same. The fact that defendant engaged in plea bargaining and had offered to plead to, by implication, a more oneorous crime, is presented to the jury in this case as a prior judicial admission of guilt of the crime on which they sit in judgment. We are satisfied that an admonition under these circumstances was not sufficient to assure the defendant a fair trial. We conclude that the motion for mistrial should have been granted.
Bill of Exceptions No. 12 was reserved when the district attorney posed another comment or question which is prohibited by the Code:
"BY THE DISTRICT ATTORNEY, EDDIE KNOLL:
Q. Now, as a resulf [sic] of that automobile accident, isn't it a fact that you are charged with attempted murder........
"BY MR. BENNETT:
I object and move for a mistrial on that, Your Honor. You cannot refer to criminal charges pressed against anybody.
"BY THE COURT:
I would sustain the objection ... he can be asked wheather [sic, whether] he has ever been convicted of a crime. I will deny the motion for a mistrial and ask the jury to disregard that statement.
"BY MR. BENNETT:
And to the Court's ruling, I respectfully object and reserve a bill of exception, making a part thereof, the question propounded by the district attorney, the objection and the ruling of the Court."
Again, the majority on first hearing also found this to be error in violation of La.R.S. 15:495:
"* * * no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction * * *." *357 The State has clearly violated a direct and substantial statutory prohibition. On original hearing, this Court attempted to justify the district attorney's reference to the defendant's indictment for another offense on the basis that another offense could be established if it met the prerequisites of La.R.S. 15:445 and La.R.S. 15:446. Both of these statutes refer to evidence of similar offenses for the purpose of establishing knowledge and intent. La.R.S. 15:445 and La.R.S. 15:446 do not purport to modify or form exceptions to the concise prohibition of La.R.S. 15:495.
Juries are impressed by the official act of bringing a charge against an individual, whether in the form of grand jury indictment or by bill of information instituted by the district attorney. The criminal law of this country with great uniformity prohibits reference to arrests and indictments for any purpose in a criminal trial. References to arrests and indictments cannot be used even for the purpose of impeachment. Most certainly mere charges cannot be paraded before a jury for the purpose of proving an element of the crime or a motive for the crime. A mere admonition to the jury was insufficient to cure this remark which was inflammatory by nature and prejudicial to the jury's ability to return a fair and impartial verdict. The district attorney's statement constitutes a direct, flagrant and substantial violation of a statutory right accorded the defendant.
For the reasons assigned, the conviction and sentence are reversed and the case is remanded for a new trial.
SANDERS, C. J., dissents, adhering to the views expressed by the court on original hearing.
SUMMER, J., dissents and will assign reasons.
MARCUS, J., dissents for reasons set forth in original opinion.
NOTES
[1] La.R.S. 15:445:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
La.R.S. 15:446:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."